Millaudon v. The New Orleans and Carrollton Rail Road Company ; &c.

---

### Laurent Millaudon v. The New Orleans and Carrollton Rail Road Company.

### The New Orleans and Carrollton Rail Road Company v. Laurent Millaudon.

The act of incorporation of a banking company provided that its capital should be divided into shares of one hundred dollars, of which five dollars should be paid at the time of subscribing for the stock, and the residue in such instalments, and at such times, as might be required by the Directors.  Fifty dollars on each share were called in, and paid.  A resolution, subsequently adopted by the Directors, provided, " that any stockholder who shall pay in anticipation a part, or the full amount due on the stock held by him, shall be entitled to dividends thereon in proportion to the amount so paid in."  Under this resolution, a stockholder paid up the whole amount due on the stock held by him, and received dividends thereon, and loans (less, however, than the amount so advanced by him) upon the pledge of it.  The Bank having gone into liquidation, required the re-payment of the loan, and refused to call

Millaudon v. The New Orleans and Carrollton Rail Road Company; &c.

for further contributions from the other stockholders. An action was commenced by the stockholder who had paid in full against the Bank, to compel the calling in of the whole amount subscribed, or, in default thereof, or in the event of the inability of the stockholders to pay the balance due, to recover the amount paid by him beyond fifty dollars on each share, with interest on the over-payment, and to restrain the Company from exacting re-payment of the loan made to him, until the stockholders should be placed on an equality as to their payments. The Bank, thereupon, sued on the notes given for the loan. On appeal from a judgment rendered in the two actions, which had been consolidated : *Held*, That no stockholder can be liable for more than one hundred dollars on each share held by him, and that each share must lose an equal amount on the final liquidation of the Bank. That if the whole capital be sunk, those who have paid but fifty per cent will be debtors for the balance, and those who have paid in full cannot be called on for more. That if but half have been lost, the former are no further liable, but a balance will be due to the stockholder who has paid in full. That the payment of the whole amount of the shares under the resolution of the Directors, did not change the relative position of the stockholders to each other as partners, except as to the dividends, the one having merely anticipated the payment of all he could ever be called on to pay, and the others remaining liable for the balance of their subscriptions. That the payment was under the tacit condition that, if the concern proved profitable, the party so paying should receive dividends in proportion to the amount paid by him, and on the winding up of its business, after payment of the debts from the surplus profits, the whole amount so paid in ; and, if not profitable, that he should lose only the same proportion, upon each share, as the other stockholders. That *quoad* the creditors of the Bank, the excess above fifty per cent so paid in is capital, liable for its debts ; but that, as among the stockholders, the party who made the advance is a creditor to the extent of the surplus, and entitled to interest thereon from the time when the Bank ceased its operations. That the stockholders are liable for the whole amount of their subscriptions, and that, if any further payment beyond fifty dollars on each be necessary to the discharge of the debts of the Company, it will be the duty of the Directors to call on all the stockholders for an equal contribution ; and that it would be unjust to use the amount paid by one stockholder, beyond the others, for that purpose. That the Bank having gone into liquidation, a stockholder may maintain an action against it ; and that the loan, being less than the amount advanced by the borrower beyond the other stockholders, may be retained by him, unless required for his proportionate contribution towards the payment of the debts of the Company.

The property of a partnership is common, held *pro indiviso* by all the partners, responsible for the debts of the concern, and subject, after their payment, to division among the partners, according to their agreement. Each is a debtor for what he promises to bring in ; and if one have brought in more than the rest, he is a creditor of the partnership for the difference, and, as between the partners, has a right of retention on the common stock for its repayment, and for any debt of the partnership for which he may be made responsible.

The liability of the stockholders in the New Orleans and Carrollton Rail Road Company under their subscriptions, is not affected by the act of 14th March, 1839, relieving the Banks from the forfeiture of their charters. If a further call upon those who have not paid in full, be necessary for the discharge of the debts of the Company, the Directors are authorized to make it.

On the third of April, 1841, Laurent Millaudon presented a petition to the Parish Court of New Orleans, alleging : That the corporation created by an act of the legislature of 9th February, 1833, under the name of the New Orleans and Carrollton Rail Road Company, was, by an act of the 1st April, 1835, invested with banking privileges, and authorized to increase its capital from three hundred thousand dollars, as fixed by the original charter, to three millions. That the additional capital, like the first, was divided into shares of one hundred dollars each, on each of which five dollars was to be paid on subscribing, and the remainder in instalments, as directed by the second section of the original act. That he is a stockholder in the Company, to the amount of two hundred and seventy-eight thousand five hundred dollars. That by the second section of the act of the 1st April, 1835, five offices of discount were established in different parts of the State, with an aggregate capital of one millon four hundred thousand dollars. That by a subsequent act, of the 1st of March, 1836, it was provided, (sect. 2,) that one-fourth of the capital of the branches should be furnished within six months from that date, and the remainder as the capital of the Bank should be paid in, but in such manner that the branches should receive one-half of their capital within sixteen months, and the residue within twenty-four months from the passage of the act ; and that it was contemplated, both by the legislature and stockholders, that the whole capital subscribed for the purpose of carrying into operation the banking privileges granted by the act of 1st April, 1835, with that subscribed in the first instance, should be paid on or before the 1st of March, 1838 ; and that it was the duty of the Directors appointed to manage the affairs of the Company to have called it in by that time. That the petitioner, and those under whom he holds such portion of his stock as was not comprised in his original subscription, with other stockholders, believing that the affairs of the Company would be conducted in conformity to the spirit of the laws by which it was created and its duties and privileges were regulated, paid up in full, previous to the 1st of March, 1838, the amount of the shares for which they had subscribed. That notwithstanding his repeated appeals to the Directors to call in the balance due on the stock, fifty per cent of the whole amount subscribed has remained un-

JANUARY, 1843.⁻ 491

Millaudon v. The New Orleans and Carrollton Rail Road Company ; &c.

called for, to his great injury. That the Company, by calling in the whole of the capital, might have carried on a large business, and have realized great profits, while, by its neglect to do so, it has subjected itself to continual embarrassments and large losses, in consequence of which the stock has been greatly depreciated. That the course pursued by the Directors of the Company, has rendered it necessary to reduce the loans made to him on a pledge of his stock ; and that this reduction falls with greater weight on those who have paid the whole amount of their subscriptions, as no allowance has been made for the excess of their payments over those of the other stockholders, and interest on such excess has been refused to them. That on the refusal of the Directors to call in the remaining amount due from the other stockholders, equity required that those who had paid up the whole of their subscription should have been permitted either to withdraw the excess thus paid in, or to claim interest, at the rate charged by the Company on its loans, from the 1st March, 1838.

The petitioner further alleges, that he has, at different times, applied to the Company, demanding that the whole stock should be called in, and all the stockholders placed on an equal footing ; that no reduction upon the loan made on his stock should be exacted from him, so long as the over-payment on his subscription should be sufficient to cover the amount of the loan, and the other stockholders be allowed to delay the payment of the balance due on their subscriptions ; that, in case the remainder of the stock should not be called in, the excess paid by him should be refunded ; and that the Company should pay him interest on such excess, at six per cent a year, from the 1st of March, 1838, (at which time, he alleges, it was contemplated that the whole amount subscribed for stock would have been paid in,) which interest amounted, on the 1st of March, 1841, to $29,065.

The petition concludes by praying for a judgment, ordering the whole amount of the stock subscription to be called in immediately ; or in default thereof, or in the event of the inability of the stockholders to pay the balance due, directing $139,250, the excess paid by him, to be refunded ; and allowing him $29,065, for interest on such excess, due on the 1st March, 1841, and restraining the Company from requiring any reduction on the loan

made to him, until all the stockholders be put on an equal footing. There was the usual prayer for general relief.

On the 30th April, 1841, the defendants answered.   They pleaded a general denial, acknowledging their existence as a corporation under the acts of 1st April, 1833, 1st April, 1835, and 1st March, 1836, and the fact of Millaudon's being a stockholder, or holding stock in his name, to the amount of two thousand seven hundred and fifty shares.   They aver that so far as the shares held by the petitioner have been paid in full, the payments were voluntary on his part ; that they were made under a resolution of the Board of Directors, to which Millaudon was a party, by which it was provided, that any stockholder who should pay, in anticipation, any part, or the full amount due on the stock held by him, should be entitled to a dividend thereon in proportion to the amount so paid in, provided that no dividend should be made on any instalment which should not have been paid in more than three months previous to the declaration of such dividend ; and that since such payments were made by the petitioner, he has received a dividend on the whole amount so paid in by him, whenever any dividend has been declared by the Directors, besides other benefits and advantages from such payments.   It is further alleged that Millaudon has been for many years, and was anterior to such payments on his stock, a Director of the Company; that he was cognizant of, and a party to the acts of the Board of Directors to whom the administration of the affairs of the Company was entrusted by the charter, and is bound thereby ; and that his acts as a stockholder and Director, are contrary and repugnant to the claims and demands set up in his petition.   The defendants conclude with a prayer for a judgment in their favor, &c.

In a supplemental petition filed on the 27th May, 1841, Millaudon further pleads, in case the court should be of opinion that the Board of Directors were authorized to limit the calls on the stockholders under their subscriptions, to the amount already paid in, and that the stockholders were not bound to complete their subscriptions to the full amount, before 1st March, 1838, that the excess of payment made by him was made in error, and that he is entitled to reclaim the same, with interest at six per cent a year,

JANUARY, 1843. 493

Millaudon v. The New Orleans and Carrollton Rail Road Company; &c.

during the time for which the Company had the use of such over payments.

On the day on which the Company filed their answer to Millaudon's petition, they commenced an action against him, representing that he was indebted to them in the sum of $82,650, the amount of five promissory notes, executed by him, and secured by a pledge of stock of the Company, a copy of which act of pledge was annexed to their petition. Their petition prays for judgment for the amount of the notes, with interest from their maturity, at six per cent a year, with a privilege of pledge upon the stock by which the payment of the notes was secured.

In answer to this petition, Millaudon acknowledged his execution of the notes, and set up in defence the matters alleged in the petition filed in his action against the Company.

The second section of the act of 9th February, 1833, incorporating the Company for the purpose of constructing the Rail Road, declares:

" That the capital stock of said Company shall not exceed three hundred thousand dollars, divided into shares of one hundred dollars each share, and payable in such instalments, and transferable in such manner, as shall be provided by the by-laws of the Company; and that upon each and every such subscription there shall be paid at the time of subscribing, five dollars on every share so subscribed, and the residue thereof shall be paid in such instalments, and at such time, as may be required by the President and Directors of said Company;" &c.

By the act of the 1st April, 1835, which amended the charter and conferred the privilege of banking, it is provided (sect. 1,):

" That the capital stock of said Company be extended to the sum of three millions of dollars, inclusive of the sum of three hundred thousand dollars fixed by the original charter of said Company, and that such additional capital stock shall be divided into shares of one hundred dollars each, and payable in such instalments, and transferable in such manner, as shall be provided by the by-laws of said Company; and that upon each and every such subscription there shall be paid at the time of subscribing five dollars on every share so subscribed, and the residue thereof shall be paid in such instalments, upon such notice, under such penalties

and such provisions, as are set forth with regard to subscriptions to the original stock of said Company, in the second section of the original act of incorporation thereof."

. A subsequent section of this act provides for the establishment of five branches, with certain capitals mentioned in the act.

By an act of the 1st March, 1836, further amending the charter, it was declared (sect. 2,) :

" That one-fourth at least of the capital of the branches, shall be furnished within six months from the passage of this act, and the remainder in proportion as the capital of said Bank is paid in ; *provided*, said branches shall receive half of their capital within sixteen months, and the whole within twenty-four months ; and in case said branches do not yield a nett profit of six per cent per annum, then and in that case, they or either of them may be withdrawn twelve months after said branches shall have received the whole amount of their capital."

The two cases were consolidated, and tried together. It was proved, that Millaudon owned two thousand seven hundred and fifty shares of the stock of the Company, which had been paid for in full ; that certain other stockholders, had paid in full ; that those who have not paid in full, have paid but fifty per cent on each share ; and that the last call on the stockholders for payments under their subscriptions, was made by the Board of Directors on the 19th April, 1836, to complete the fifty per cent.

The resolution of the Board of Directors, under which Millaudon paid his stock in full, was adopted on the 13th May, 1836, and is in these words :

" Resolved, that any stockholder who shall pay, in anticipation, a part, or the full amount due on the capital held by him, shall be entitled thereon to dividends in proportion to the amount respectively paid in ; provided that no dividend shall be made or received in favor of any instalment, which shall not have been paid in more than three months prior to the declaration of such dividend."

Nicholson, the cashier of the Company, testified, that he was generally present at the meetings of the Directors ; that the question of calling in the whole capital was often agitated before the Board ; that Millaudon was always desirous of having it done ; that considerable amounts of the stock of the Company had been

transmitted to Europe for sale ; and that stocks not paid in full cannot be sold in the European markets. It was proved, by other evidence, that Millaudon had urged the Directors to call in the balance due on the subscriptions. The Company also, offered evidence of the dividends which had been paid to Millaudon, and to the former owners of part of the stock held by him. It was admitted that the Bank was in a state of liquidation.

The Parish Court, *Maurian*, J., gave a judgment in favor of Millaudon for $137,500, the amount paid by him above what had been required from the other stockholders, with legal interest from judicial demand (3d April, 1841,) until paid ; and in favor of the Company for $82,650, the amount of the notes sued on by them, with interest at six per cent from maturity ; the one sum to be deducted from the other, the difference to be the amount due to Millaudon by the Company. The latter were condemned to pay the costs, and have appealed.

*T. Slidell*, for the appellants. The petitioner prays that the whole stock of the Company may be immediately called in, and all the stockholders ordered to pay the fifty per cent remaining due on their subscriptions.

The first section of the charter of 1835 provides, that upon each and every subscription there shall be paid, at the time of subscribing, five dollars on every share so subscribed, and the residue thereof in such instalments, upon such notice, and under such penalties and such provisions, as are set forth with regard to subscriptions to the original stock of said company in the second section of the original act of incorporation. The second section referred to provides, that the stock shall be divided into shares of $100 each, payable in *such instalments*, and transferable in such manner, as shall be provided by the by-laws of the Company ; and that upon each and every such subscription there shall be paid, at the time of subscribing, five dollars on every share, and the residue thereof, in such instalments, and at such time, *as may be required by the President and Directors of said Company*. If the above provisions, which are the only distinct and positive ones in the charter, be interpreted by themselves, it is indisputable that the calling in of the stock is left entirely to the discretion of the cor-

poration itself.   The words are plain, and susceptible of but one construction.

But it is contended by Millaudon, that a contrary interpretation impliedly results from other provisions of the charter.   An implication in one part of an instrument, to control a clear and distinct enunciation in another part of the same instrument, must, to say the least, be *direct, certain* and *irresistible*.   The provisions of the charter upon which the counsel for Millaudon relies, are not of such a character.   From the facts, that, by the second section of the act of 1835, offices of discount were established at five different places in the State, with an aggregate capital of one million four hundred thousand dollars, and that by a subsequent act of the legislature, (act of 1836, sect. 2,) it was provided that one-fourth of the capital of the branches should be furnished within six months from the passage of the act, and the remainder in proportion as the capital of the Bank shall be paid in, provided that said branches shall receive one-half of their capital within sixteen months, and the whole within twenty-four months, the conclusion is attempted to be drawn that it was in the contemplation of the legislature and of the stockholders, that the whole capital subscribed for putting into operation the banking privileges granted by the act of 1835, together with the capital originally subscribed, should be paid in full before the 1st March, 1838. Is this conclusion *direct, certain, and irresistible?*

The history of the bank charters granted by the legislature of this State shows, that when such charters have been granted to the citizens of New Orleans, the grant has been usually accompanied by provisions for the real or supposed advantage of the country parishes ; and that it has been usual to exact a *bonus* for the benefit of the country parishes under different forms—sometimes in the shape of branches of discount and deposit, sometimes of loans to the country parishes or districts, sometimes in the shape of an absolute advance towards the construction of a rail road or bridge, or other improvement ; and perhaps of all the charters so granted, not one contains so many onerous provisions of this nature as the charter now under consideration.   These were not provisions for the benefit of stockholders, but for the benefit of the

JANUARY, 1843. 497

Millaudon v. The New Orleans and Carrollton Rail Road Company ; &c.

parishes. They were stipulations *pour autrui*, both practically and in a technical sense. The very charter under consideration contains the strongest internal evidence of our position; for the second section of the act of 1835, requiring the establishment of five branches or offices of discount and deposit, contains the following clause : " *Provided,* that the capital of the aforesaid branches be called for by the several parishes entitled to the same, within three months after their establishment." So, in the third section of the same act, the legislature, apprehensive that the burden imposed on the Company might be too heavy to be borne, declared, that " the mother Bank may withdraw any of said branches after two years, if they do not yield a nett interest of five per centum per annum."

The provision in the third section of the act of 1836, is a stipulation for the benefit, real or supposed, of the country parishes, exacted by way of *bonus* from the corporation, and to be fulfilled within a specified period. Can it, then, be contended, if the Bank should find ways and means to furnish the capital to the branches, without calling in the whole of its capital, that it could not lawfully do so ? Who could complain ? Not the State, for the obligation of establishing the branches for the benefit of the parishes, would have been fulfilled. Not the parishes, for they would have received all that the bounty of the legislature intended they should get. Not the stockholders, for they had confided the administration of their affairs to the Board of Directors, elected by themselves, and whose members are identified in interest with them. If the capital had not been advanced to the parishes for whose benefit the stipulation was made, could they not, at the expiration of the period, by legal proceedings, have compelled the advance ? This interpretation, for which we contend, makes the several parts of the charter harmonize, and does violence to none. The interpretation claimed by Millaudon requires, that an *implication,* remote in its character, and unnecessary to give effect to any part of the charter, shall repeal the clear and unequivocal enunciation of the legislative will, expressed in the plain language of the second section of the original charter, and repeated in the first section of the new charter. *Ut res magis valeat quam pereat,* is a sound principle of interpretation. Our position gives effect to the whole

law. The forced *implication* of our opponent strikes out one of its plain and reasonable provisions, and wrests from the Board of Directors, without necessity, the grant of the power of calling in the instalments at such time, and in such manner, as the wants and interests of the institution might suggest or require.

" Laws *in pari materia,* or upon the same subject matter," says the Civil Code, (art. 17,) " must be construed in reference to each other ; what is *clear* in one statute, may be called to explain what is doubtful in another." Here the effort seems to be to reverse the principle, and to *invoke what is doubtful for the destruction of what is clear.*

Millaudon further prays, " that in default thereof, ( i. e. of calling in the balance due on the stock,) or in case of inability of the stockholders to pay the residue of their subscription, the surplus paid by him, to wit, the sum of $139,250, may be refunded."

The minutes of the Bank show that the over-payments by Millaudon were gratuitously made, under the permission granted by the resolution of May 13th, 1836. Whether Millaudon, like others, did this for the purpose of facilitating his sales in Europe, or in the hope of frequent dividends, or for any other reason, it is certain that *he paid voluntarily, that he has received dividends on the excess of fifty per cent, and that for four or five years he has had large stock loans on the excess.* Is he to reap all these benefits from a privilege accorded by a resolution of the Board of which he was a member, and now, when adverse circumstances have reduced the value of the stock, to be permitted to recall one half of his instalments ? *Qui sentit commodum, sentire debet et onus.*

The fact that Millaudon's over-payments were *voluntary,* and that he has been benefited in the shape of dividends and stock loans, will satisfy the court that the claim of interest is untenable. The interest spoken of in the 18th section of the act of 1835, relates to the old stock only ; and cannot, without palpable violence to the charter, be applied to the new stock. The English text is plain, though the French text has been rendered unintelligible by careless translation.

Millaudon also demands, " that the Company be restrained from requiring any reduction on the loans made to him on a pledge of

JANUARY, 1843. 499

Millaudon v. The New Orleans and Carrollton Rail Road Company ; &c.

his stock, until all the stockholders be put on an equal footing with himself."

If there be any inequality, it is the result of his own voluntary acts, with a view to his own benefit and convenience. While the Bank was prosperous, he received his dividends, and has had stock loans on the whole amount paid. He is the partner of the other stockholders. The Bank *quoad* its stockholders, is really a partnership. Millaudon voluntarily put in twice the amount contributed by his associates. While the Company prospered, he received his *pro rata* of profits ; now that its situation is changed, he demands back half of what he contributed to the capital of the partnership, without the indispensable preliminary of *a liquidation of the partnership affairs*, and the payment of the partnership liabilities. The liquidation of the partnership affairs, is an indispensable preliminary to the withdrawal of his capital by any partner. " Nothing," says this court, in the case of *Faurie* v. *Millaudon*, 3 Mart. N. S. 476, " is more clear than that the acting partners are not accountable to the others, much less to a number of them, even the majority or more, for any particular transaction singly, nor any number of transactions, but only for that balance which, after a settlement of accounts, shall appear due." Again, in the same case : " A partner has no action against another, except to make him account, until a final settlement takes place, and then for the balance that appears." " A partner has no right to be paid until all claims against the partnership are discharged." If these principles be true as to ordinary partnerships, with how much greater force do they apply to an incorporated banking institution ? The very amount furnished by Millaudon, by his voluntary contribution, formed an important portion of the capital, on the faith of which the Bank issued its promissory notes, and the public accepted them as a currency. This capital is the pledge of its creditors. Should the judgment which Millaudon has obtained be affirmed, he will sell the assets of the Bank, and though himself a debtor of the public *quoad* his stock, will be paid before his own creditors.

*Eustis*, on the same side. The first question which the case presents is : Were the Directors bound to call in the whole nominal

amount of the stock ?    Is any such duty or obligation imposed on them by the charter ?

On the mere construction of an instrument, little can be offered to a court like this, by way of argument.    Thoroughly familiar with the principles of law relating to the subject, their application is an easy task.    The court, however, may derive some assistance from explanations.

It may, at first, be considered singular, had the legislature intended that the whole capital should be paid in within a given time, that it did not so provide in express terms.    So far from this being the case, the second section of the original act, which provides for the capital stock, its payment, and its terms, provides for the very reverse.    " The residue thereof," says this section, " shall be paid in such instalments, *and at such time,* as may be required by the President and Directors of said company."    The payment of five dollars was exacted, in cash, *at the time of subscribing ;* and the *period for the payment of the balance,* was left to the discretion of the Board of Directors.    If this be not a positive enactment as to the time of payment, it would be difficult to make one.

Is there any thing in the charter, or in the amendments, which annuls or repeals this positive enactment as to the time of payment?    It is contended that there is, and that by the second section of an act amendatory of an act amending the charter, this important and substantive provision is destroyed.    It must be borne in mind, that the mode of payment, prescribed in the charter, is re-asserted and preserved, by an express enactment in the amending act.

In the first section, providing for increasing the stock, it is said, that it shall be *payable in such instalments* as may be prescribed by the by-laws of the Company.

The first charter was granted in 1833, for making the Rail Road. The additional act creating the Bank, and re-enacting the clause concerning the time of payment of the stock, was passed in 1835 ; and the amendatory act, containing the clause relative to furnishing capital to the branches, was enacted the year after, in 1836.

The objection to construing the provision concerning the branches as repealing this express and twice enacted fundamental clause, upon

JANUARY, 1843. 501

Millaudon v. The New Orleans and Carrollton Rail Road Company ; &c.

all principles of sound construction, is well taken. The charter, amendments, and supplements, must be taken as one whole, and effect given to every part. A fundamental provision, like the one under consideration cannot be repealed by mere *implication*. The implication must be sacrificed rather than the *twice-enacted* clause.

It is clear, from all the enactments, that the furnishing of capital to the branches, was a part of the *bonus* given in lieu of a forfeiture, (which had been remitted by the previous section,) and that the attainment of this object was the intention of the second section, which provided for the payment of the capital to the branches, and did not purport to treat of, or make any change in the time fixed for the payment of the capital stock. The branches were entitled to have their capital, one-half in sixteen, and the other half in twenty-four months. But should the Bank provide the branches with capital from any other source, the payment of the capital would always be a question of administration resting in the discretion of the Directors. The terms fixed for furnishing capital to the branches can, in no sense, be considered as repealing two positive enactments, concerning another subject, to which the clause refers as a mean and not as an end.

The furnishing of capital to the branches, was not necessarily dependent on the payment of the stock in full. The capital might have been furnished from profits, or from voluntary payments on stock, like that by Millaudon. Had several of the large stockholders paid their stock in full, there would have been ample means to supply the exactions of the charter in favor of the branches, without any general call on the stockholders. The general contribution is, therefore, not indispensable, under the charter, to the attainment of the end.

But the prayer of Millaudon *is not that the capital be furnished to the branches ;* and the court can in no event order the stock to be paid up, without giving to the funds the direction which it is contended the charter requires.

The demand to withdraw any portion of the capital stock of a corporation, voluntarily and lawfully paid in pursuance of the provisions of the charter or by-laws, is entirely inadmissible. It is evident that the payment of the whole amount of the stock by some

of the corporators was within the intendment of the charter, for, besides other provisions, the 18th section of the act of 1835, expressly commands the payment of the dividends in proportion to the amount paid in.

If a partner lend money to a partnership, he undoubtedly becomes a creditor for that amount; but it is an error to confound such a case with the one under consideration. By this partnership, if it be one, each of the partners was at liberty to increase his interest to a certain amount, and was entitled to receive his proportion of profits accordingly; but having established his interest, and received his share of profits, by what provision of the charter, or on what principle of law, can he diminish it at pleasure, during the existence of the partnership ?

The claim for interest is untenable. Interest can only be allowed in cases provided for by law. The interest allowed by the 18th section of the act of 1st April, 1835, is to be paid on the old stock—on instalments paid *previous to the opening of the new books,* and for any excess over those to be paid under that act. If those who should pay their stock in full under the new subscription, were entitled to interest in addition to dividends, provision would have been made for so important a privilege. It would not have been left to conjecture or implication.

The loans made to a stockholder, from the very nature of banking institutions, must be punctually paid, according to the regulations of the Bank, by which he, as a corporator, is bound. He cannot deviate from rules which he has himself prescribed for his own direction. Any other course leads to the very destruction of the object of the partnership.

Nothing but confusion can result from permitting a stockholder to set up matters which relate to the corporators *inter se,* against a loan received by him, and which is payable directly to the corporation. Is there any authority for this ? Has such a right ever been recognized by a court ? Is there any principle of law which countenances it ?

*Soulé,* contra. The counsel for the Bank have brought into the debate a question not raised by the pleadings, and which could only have been presented in the shape of a peremptory exception. It is contended that the suit brought by Millaudon cannot be

maintained, so long as the Bank has not proceeded to a complete liquidation. This position is untenable. I have attempted to show, that no other portion of the capital paid in by Millaudon can be considered as a component part of the partnership or banking fund, than that which corresponds to the capital called in by the Board. Indeed, if the rules laid down by all writers on partnership be adhered to—if a perfect equality be the fundamental principle of every commercial association, and particularly of an anonymous partnership like the one created by the charter of the Carrollton Bank, it will hardly be denied, that no one of the partners can be bound to contribute towards forming the general fund in a greater proportion than the rest. Thus, although, like all others, such partner may remain liable towards third parties to the whole extent of the capital subscribed, yet, as between the partners themselves, he will be to all intents and purposes a creditor of the common fund, for any surplus he may have paid above the amount demanded from the other stockholders or co-partners.

A stockholder in the situation of Millaudon presents a stronger case, *on account of the peculiar situation of the Carrollton Bank,* and the effect produced by the act of 1839 on its capital. The Bank, it is admitted, has gone into liquidation, and no other call for capital will hereafter be made on the stockholders. Besides, by the 2d section of the act of March 14th, 1839, the stock of the Banks which had then forfeited their charters by suspending specie payments, was limited to the amount which should be called in on the 1st of February, 1841 ; and the limitation is so absolute, that the Banks are precluded from acting on a larger amount of capital than that which may have been paid in at that period. It is thus clearly shown that, up to this day, but fifty per cent of the capital subscribed has been called in ; and whatever *excess may have been paid by anticipation, ceases to be a portion of the capital of the Bank.* It could not be otherwise without a flagrant violation of the rule, that the most perfect equality shall exist between all the partners or stockholders.

The court below refused to allow the interest claimed. The 18th section of the act of 1835, allows it on any excess paid in advance by any stockholder.

The excess of capital paid by Millaudon, is no more a part of

the stock, than the portions remaining unpaid by the other partners. Such excess creates a debt against the partnership in favor of the partner who paid it, in the same manner as any deficiency on the part of any partner or stockholder, creates a debt against him in favor of the partnership.

BULLARD, J. We may assume it as undoubtedly true, that no stockholder can be liable for more than a hundred dollars for each share holden by him ; and that each share is to lose an equal amount on a final liquidation of the Bank. Hence, if the whole capital shall be found to have been sunk, those who have paid but fifty per cent will remain debtors for the balance of their subscription, and those who have paid up entirely cannot be called on for any more. If, on the other hand, it should turn out that there is a loss of fifty per cent, of the stock subscribed, then those who have paid up that amount are no further liable ; but there will remain a balance in favor of those who have paid up in full, unless it be admitted that one share is to lose more than the others. If Millaudon were now garnisheed by the creditors of the Bank, he might defend himself by showing that he had paid up all he was bound to pay. If a stockholder, who had paid but fifty per cent, were sued, he would be liable towards the creditors of the institution for the balance of $50 per share. These appear self evident propositions. When Millaudon paid his shares in full, he did not suppose that he was to lose more on each share, ultimately, than any other stockholder. His position, relatively to the other stockholders, as partners, was unchanged, in our opinion, except as to the occasional dividends which he was entitled to draw in proportion to what he had paid in. Each still remained liable for the amount of his original subscription, and for neither more nor less. The only difference was, that Millaudon had anticipated the payment of all he could ever be called on to pay as a stockholder, necessarily, we think, under the tacit condition, that, if the concern should prove profitable, he should receive dividends of profits *a pro rata*, and, on the winding up of the concern, after the payment of its liabilities out of the surplus profits, that the whole capital stock which he had paid should be refunded to him ; and, on the contrary, if the Bank should meet with disasters, that he should lose the same proportion upon each share, as the

JANUARY, 1843. 505

Millaudon v. The New Orleans and Carrollton Rail Road Company; &c.

other stockholders, and no more. If this be not true, then the original terms and conditions of the association have been materially changed from what they appear by the charter. According to the charter, each subscriber became liable and interested in proportion to his number of shares, and was to share in the profits and losses in that proportion. The resolution of the Board, under which Millaudon paid in full, contains only the condition, that he should receive dividends in proportion to the sum paid in. Can it be imagined that another condition is implied or understood in that resolution, to wit, that if the affairs of the Bank should prove disastrous, Millaudon should lose double the amount lost by the other stockholders; that he should lose the whole and the others only one-half of their subscription—of the capital which each stockholder engaged to put in? Such a construction of that resolution would be a very forced one, and involve the monstrous incongruity of one stockholder losing on the final settlement of the affairs of the Bank twice as much as another, merely because he had paid up his stock in advance.

Such are the principles which apply, as among the stockholders themselves—as between Millaudon and his co-corporators. They are the elementary principles of the law of partnership, stripped of all technical phraseology, and are to be found in the various authors who have treated on the subject. Some of them have been referred to by the counsel for Millaudon. Pothier considers it of the essence of the contract of partnership, that the parties should propose to make profits, in which each shall participate in proportion to what he has brought into the concern. He considers each as a debtor to the partnership for what he had promised to bring in. It results from this principle as a necessary corollary, that if one partner has brought in more than the others, he is a creditor of the partnership for the difference. Pothier, De Société, No. 12.

It is true that all the funds paid in, and all the property acquired form partnership stock, and, as it relates to creditors, stand as a pledge for the payment of all liabilities to the public. "Each partner," says Judge Story in his Treatise on Partnership, "has a specific lien on the present and future property of the partnership, not only for the debts and liabilities due to third persons, but

also for his own amount or share of the capital, stock, and funds, and for all moneys advanced by him for the use of the firm, and also for all debts due to the firm for moneys abstracted by any partner from such stock and funds beyond his share." Sect. 97.

· The language of Bell in his Commentaries on the Scottish law, which sprang from the same fountain with our own, is very pithy and cogent on this subject. "The property of the company is common, held *pro indiviso* by all the partners as a stock and in trust, responsible for the debts of the concern, and subject, after the debts are paid, to division among the partners *according to their agreement.* This is a great point in the doctrine of partnership, and important consequences are deducible from it. The common stock includes all lands, houses, ships, leases, commodities, money—whatever is contributed by the partners to the company uses. It comprehends, also, whatever is created by the joint exertions of the company, or acquired in the course of the employment of their capital, skill, and industry. All this, by *the* operation of law and the nature and effect of the contract, becomes common property ; is held by all the partners jointly for the uses of the partnership, and is directly answerable as stock for the payment of its debts." "The stock, or common fund, is held by the partners *pro indiviso.* This *pro indiviso* right implies, as between the parties themselves, a right of retention in each partner over the stock, for any advances which he may have made to the company, or for any debt due by the company for which he may be made responsible. It also implies, in relation to the public at large, creditors of the company, a trust in the several partners, as joint trustees, for the payment, in the first place, of the debts of the company." 2 Bell, 613.

There is an obvious distinction between the rights of the stockholders, *inter se,* and their rights and obligations in relation to the creditors of the Bank. We have found no difficulty in coming to the conclusion that, although in relation to the public, all the funds of the Bank, including what was paid in by Millaudon over and above what was paid by other stockholders, may be liable as stock to the creditors of the Bank, yet that, after their debts are paid, he would be entitled to receive double the amount which would be coming to the others. And this brings us to the inquiry,

whether the plaintiff be entitled, *at this time*, to withdraw what he has overpaid, or how far he may invoke the aid of the court to coerce such an administration on the part of the defendants as will secure his eventual rights, and maintain that equality in the contingent liabilities of the stockholders, which equity, as well as the charter, requires. And before entering into this part of the case, it may be premised that, as a consequence of the principles above stated, if it were now ascertained that the loss sustained by the institution would not exceed fifty per cent, Millaudon would be entitled, at once, to recover the excess paid by him on that amount. It is true that, if the Bank were yet in operation as such—if its capital were yet employed in banking, such an action would be premature; but it is admitted that the institution is in the progress of liquidation, having acceded to the terms of the act of the last legislature for that purpose. In liquidating the concerns of the Bank, the Board of Directors become the mandataries of the stockholders for that purpose, and the trustees of the creditors of the Bank. Their duties result from this twofold relation towards the stockholders and the public. They can declare no more dividends, nor subject the stockholders to any new liabilities. They are so to husband the resources of the Bank, as to meet all its existing liabilities, and preserve for the stockholders as much of the capital as possible. If, for the purpose of paying debts, a further call upon the stockholders who have not paid their subscriptions in full, should be necessary, we do not doubt the authority and obligation of the Directors to make the call. The act of 1839, upon which the counsel for the Bank rely to show that no further contribution can be required, we think does not diminish any of the original liabilities of the stockholders, and that they still remain contingently liable for the full amount of their subscriptions; but that, for purposes of banking, the capital stock, as it stood in March, 1840, was not to be changed. But if a loss should be ascertained, for example, of sixty per cent on each share, the Directors are authorized to call in ten per cent from those who have paid but fifty, and to employ, for the purpose of paying the loss, ten dollars per share of the stock paid in full by Millaudon. Equity forbids that, in such a contingency, the whole amount paid by Millaudon should be used in paying the

deficit, and that he should be turned over to his action against each stockholder to be reimbursed what he may have paid over his share. In a direct action by a creditor against the Bank, that fund would undoubtedly be a Bank fund, liable to execution, because, *quoad* the creditors, it is capital stock; but it does not follow that the liquidators of the institution would be justified in desisting from calling upon the other stockholders to contribute their share, and in employing what, as between themselves, belongs to Millaudon, in paying a common debt.

The application of those principles to the cases before us is not free from difficulty. The two cases were consolidated. In the first, in which Millaudon is plaintiff, he shows that he is the owner of 2785 shares which have been paid in full, one half, to wit, $139,250, over and above the other stockholders, under the resolution of the Board of Directors above alluded to. He complains that the Board has refused to call upon the other stockholders to pay the balances due by them, and thereby place all upon an equal footing, and he prays that the court would decree: *first*, that the whole stock be called in, and all the stockholders ordered to pay the fifty per cent remaining due; *secondly*, in default thereof, or in case of inability, that the surplus paid by him, to wit, $139,250, be refunded to him; *thirdly*, that he be paid interest from the 1st of March, 1841, on said surplus; *fourthly*, that the Bank be precluded from requiring any reduction on the loans made to him on the pledge of his stock, until all the stockholders be put on an equal footing with him; and he asks for general relief.

On the other hand, the Bank sues upon sundry stock notes of Millaudon, secured by a pledge of his whole stock, and amounting in all to $82,650; and, in his answer, the latter sets up substantially the same grounds of defence as form the basis of his direct action, and prays that the amount of the notes sued on may be compensated, by deducting so much from the amount paid by him over and besides that paid by, and required from, the other stockholders.

The Parish Court gave judgment in favor of Millaudon for $137,500 less the amount of his stock notes, amounting to $82,650, and interest; or, in other words, Millaudon recovered the whole

amount paid by him over the fifty per cent originally called in, and the Bank has appealed.

It will have been perceived, from what has already been said, that this judgment would accord with our views of the rights of the parties, if it had been ascertained that the loss sustained by the institution would amount only to fifty per cent on each share, or to less ; and if the rights of the creditors, who have not yet been paid, had not been overlooked. It is liable to the further objection, that it does not reserve to the Directors the right to call back from Millaudon his proportion of stock, which may be required by the exigencies of the Bank if the losses should amount to more than the fifty per cent. It decrees a final adjustment of the matter in controversy, as if there were no debts to be provided for, or as if the creditors had no privilege on the fund, and the Directors were not in duty bound to provide for those debts.

This part of the case presents, therefore, two questions. *First.* Can the Directors, in the capacity in which they are now acting, recover on the stock notes, either absolutely or conditionally ; or, is Millaudon entitled to retain that amount, at least until it be shown that it will be required to pay the creditors ? *Secondly.* Can the court decree that any part of the capital stock shall be called in, if necessary, to pay creditors, and to maintain equality among the stockholders ?

I. Upon the first point, it appears to us, as intimated above, that, since the Bank decided upon going into liquidation, the relations between the Directors and the stockholders have undergone a material change. While the Bank was in operation, a loan to a stockholder on a pledge of stock, was, like any other loan to a stranger, liable to be called in, or its payment coerced. Even the loan in question, upon stock fully paid, could not have been exempted from such liability, upon that ground. But, at this time, the position of Millaudon, who, independently of the amount due on the stock loan, has paid more than the other stockholders, appears to us to bear a strong analogy to that of a co-heir, indebted to the estate, who cannot be compelled to pay until after a final adjustment of accounts between the heirs. The necessity for the Directors to recover this sum in order to pay debts, is not shown. Why should the common mandatary receive or require from one

of his principals a larger amount than from another, to be em-
ployed for a common object? It is a fund which can no longer
be used for any other purpose than the payment of the debts of
the institution. If any more than the fifty per cent already paid
in by the stockholders in general, should be required for that ob-
ject, why should Millaudon's condition be rendered more onerous
than that of the others? Besides the amount of the stock notes,
he has, in the hands of the liquidators, $44,850, over and above
what has been advanced by other stockholders having an equal
number of shares.

As among the stockholders, he must be regarded as a creditor
to the full amount of the surplus advanced by him; and, as it is
no longer possible to declare dividends, it is not very obvious why
he should not be entitled to interest, at least since the Bank ceased
to operate as such. Millaudon must be considered as having, in
his hands, an amount which, as relates to creditors, belongs to the
common stock, and in case of necessity must be employed in the
payment of debts, but which he is entitled to retain in his hands
until that necessity be shown, in the further progress of the liqui-
dation of the Bank. The doctrine as quoted above from Bell's
Commentaries, seems applicable to this case, to wit, that the *pro
indiviso* right of the partners implies, as between the parties
themselves, a right of retention in each partner over the stock for
any advances which he may have made to the company, or for
any debt due by the company for which he may be made respon-
sible.

II. As to the question, how far the court can interfere to require
a calling in of stock to meet the exigencies of the Bank, and to
equalize the burden of the stockholders, we may repeat, that we
consider that the paramount duty of the Board; and, if they em-
ploy in paying debts any part of the fund furnished by Millaudon
over and above the other stockholders, they are bound to replace
it by calling in from the other stockholders such a proportion as
will put all upon an equal footing, and thus be ready to account
to him for the whole surplus, if the loss should not exceed fifty
dollars per share on the whole stock. If the Directors should act
otherwise, and throw a disproportionate burden upon him, he
would have his redress, either by an action against his mandata-

Millaudon v. The New Orleans and Carrollton Rail Road Company ; &c.

ries, or the other stockholders. We cannot anticipate the necessity of such an application for redress, because we will presume that the defendants will act fairly and justly in winding up the affairs of the Bank. But that system of jurisprudence would be singularly defective, which should deny to the tribunals the authority to prevent anticipated wrongs, while they are competent to afford relief after their infliction. In the administration which the defendants have assumed under the statute, they are bound to take the law as their guide ; and parties interested have a right to the aid of the courts to prevent a deviation from that rule, to their prejudice.

It is, therefore, adjudged and decreed that the judgment of the Parish Court be avoided and reversed ; and it is further ordered and decreed, that in the case of the Bank against Millaudon upon the stock notes, there be judgment for the defendant, as in case of nonsuit ; and that in the case of L. Millaudon against the Carrollton Bank, there be judgment in favor of the Bank as in case of nonsuit, reserving to the said Millaudon his right to recover, after the payment of the liabilities of the Bank to others than stockholders, the amount he may have paid over and above other stockholders, so far as the same shall not have been employed in the payment of such liabilities ; and provided, that the President and Directors proceed to call in from the other stockholders, such further sums per share as shall be found necessary for the payment of the debts of the institution according to the principles recognized in this decree, if the loss should exceed the fifty per cent already paid in. And it is further ordered that the costs of the Parish Court be borne by the parties equally, and those of the appeal by the appellee.*

---

* *T. Slidell* and *Eustis*, for a re-hearing. No application is made to the court to reconsider so much of its opinion as defines the liabilities of the stockholders towards the public. Those who have paid but half their stock, it is conceded, can be called upon by the creditors of the Bank to pay further instalments, should the capital, now paid in, be insufficient to discharge the debts of the Bank. But the relations of the stockholders, *inter se*, are widely different from their relations to the public and to creditors. As among the stockholders themselves, the paying in of stock was, by the charter, left entirely to the Board of Directors. The Board never called in more than $50 per share. But it was willing and so resolved, " that any stockholder who shall

pay, in anticipation, a part or the full amount due on the shares held by him, shall be entitled thereon to dividends in proportion to the amount respectively paid in ; *provided,* that no dividend shall be made or received in favor of any instalment which should not have been paid in more than three months prior to the declaration of such dividend." Such are the very words of the resolution of May 13th, 1836. Millaudon availed himself of this privilege.

Let us strip this case of any considerations which may entangle it, from the question being one concerning a Bank and the stock of a Bank. Such considerations are important in establishing the relations of the stockholders towards the public ; but, *inter se,* the stockholders are mere partners. Let us imagine that A, B, and C associate themselves as partners in a commercial house. That, by the articles of partnership, they agree that the capital of the house shall be limited to $300,000, of which $100,000 is to be supplied by each partner. That they agree that each shall put in $5,000, to commence with ; and that one of the firm, elected by the vote of all, shall fix, from time to time, the amount of capital to be called in, whose decision shall be imperative upon them. That it is also agreed, that the profits shall be divided at stated periods, and that each partner may withdraw his share thereof according to the amount he has paid in. Let us suppose that A is elected to perform this duty, and let us call him the Director of the firm. The Director calls upon the partners to pay in, each to the extent of $50,000. They do so, and in doing so fulfill all that their contract of partnership required of them. For without the call of the Director, to whose discretion the matter was submitted, none were bound to advance a dollar beyond the original $5,000. In this state of things the partners agree that if any partner choose, without a call, to put $50,000 more into the firm, so as to complete at once the total amount which he could be called upon in any event to advance, he may do so, and participate accordingly in the profits. B avails himself of the offer, advances $50,000 more, and the partnership stock stands thus :

| | |
|---|---|
| A  -  -  -  -  - | $50,000 |
| B  -  -  -  -  - | 100,000 |
| C  -  -  -  -  - | 50,000 |

The business of the firm proceeds ; the partnership prospers ; $100,000 of profits is realized ; the period for the division of profits arrives. How is this $100,000 of profits to be divided ? Undoubtedly, like the dividends under the Bank's charter, in proportion to the amounts the partners have respectively paid into the firm. A then withdraws, for his share in the profits, $25,000 ; B for his share $50,000 ; and C receives $25,000.

The business of the partnership continues, the original capital remaining in the same position. The firm loses to the amount of *$100,000.* As the partnership fund was originally but $200,000, deducting the loss there remains but $100,000. Let us now suppose that the partners determine to go into liquidation. How is this $100,000 to be divided ? We say that it should be divided according to the amounts which the partners respectively advanced ; that A and C should take one-quarter, or $25,000 each, and that B should take $50,000 ; that the profits were divided according to this standard, and that the losses should be borne according to the same rule. *Qui sentit commodum, sentire debet et onus.* But the decision in this case declares, that B shall first deduct from these $100,000 the $50,000 which he has put in beyond

the other partners, and that the residue, to wit, $50,000, shall be divided among them, one-third, or $16,666 66 2-3, to each.

What then is the true and practical result of the application of this principle in the liquidation, *inter se*, of the partnership affairs. A put in $50,000; his profits were $25,000; his receipts on final liquidation are $16,666 66 2-3; and he is thus a loser by the partnership $8,333 33 1-3. C stands exactly in the same condition as A. B put in $100,000; his share of profits received is $50,000; his receipts on final liquidation are $66,666 66 2-3. Thus estimating their relative position on the final liquidation, B has gained 16 per cent on his investment, while A and C have each lost 16 per cent.

Is there any equity or justice in this? Is it possible that, with regard to the same subject matter, Millaudon can assume two different and inconsistent positions—that, as to profits, he should be considered a partner; but with reference to losses, a creditor? that his stock should be considered in the double light of an *investment in the partnership*, and of a *loan to the partnership*? The court has improperly considered Millaudon as a creditor and not a partner, and has applied to the relations of the partners, *inter se*, principles which, though undoubtedly true as regards the creditors of the Bank, are inapplicable to the stockholders as between themselves, and must necessarily lead to unjust results. The court has decided upon the rights of the stockholders, *inter se*, though not represented. The stockholders are not parties to the suit, so far as the adverse rights of their co-stockholder Millaudon are concerned. The corporation, as such, is a party to the suit against Millaudon, as its debtor upon his stock-notes. But the stockholders, as partners, are not parties to the suit; and as the decision of this court would not form *res judicata*, as between them and Millaudon, it ought not to prejudge the question which must hereafter arise between them and Millaudon, by establishing in this case the principles which are to govern, in the future division of the residuary assets of the partnership among its members.

*Re-hearing refused.*