MADISON LUMBER CO. v. PICHELOUP ET AL.

(December 16, 1929. Opinion and Decree.)

Deutsch & Kerrigan, of New Orleans, attorneys for plaintiff, appellee.

Charles J. Rivet, of New Orleans, attorney for defendants, appellants.

HIGGINS, J. Plaintiff entered suit against the defendants individually for the sum of $1,818.76, for material alleged to have been used in the construction of the building upon defendants' property, and for recognition of its materialmen's lien, under section 12 of Act No. 298 of 1926.

The petition alleges that the material was furnished to one Charles Young, contractor, between the dates of September 6th and November 11, 1927, amounting to $2,579.76, on account of which Young paid the sum of $761, leaving a balance due of $1,818.76, plus $3 for recordation of the lien; that Young used the material in the construction of a building for the account of defendants on their property; that the defendants failed to record the building contract and bond required by law; and that plaintiff's materialmen's lien was duly recorded and a sworn itemized statement thereof served upon defendants; and that Young was adjudged a voluntary bankrupt. Plaintiff prays for judgment against defendants individually and in solido and for recognition of its materialmen's lien.

Each of the defendants filed an exception of no cause of action based upon the ground that the petition shows that the material was sold and delivered between the date of September 6 and November 18, 1927, and that defendants acquired the property on December 3, 1927, and therefore plaintiff cannot hold defendants individually under section 12 of Act 298 of 1926, as defendants were not the owners of the property at the time plaintiff furnished the material, and there is no law which makes the purchaser of property responsible for a materialman's lien. The exceptions were overruled, and defendants answered by a general denial.

There was judgment in favor of plaintiff against defendants jointly in the sum of $1,821.76, the amount of the claim plus $3 for recordation fee, and recognition of plaintiff's materialmen's lien on the property. Defendants have appealed.

The record shows that Mr. and Mrs. Frank Baroni, a young couple of ordinary means, called at the office of Probst and Picheloup, a partnership composed of Clifford Probst and Frank Picheloup and engaged in real estate investment and brokerage business, for the purpose of buying a home. These parties entered into the following written contract:

"June 24th, 1927.
"On July 2, 1927, Mr. and Mrs. Frank Baroni agree to pay to Probst & Picheloup six Hundred and no/100 Dollars ($600.00) as the amount above the Homestead Loan on a three room double cottage to be built by Probst & Picheloup on lot corner Derbigny & Desire Sts., or if this lot cannot be obtained, on any lot agreed on by buyer and seller, said lot to cost about One Thousand Dollars, more or less.

"House and lot shall not cost more than Forty-five hundred Dollars ($4500.00) complete. It is understood that Mrs. and Mr. Frank Baroni have only six hundred dollars in cash, and that all expenses must be paid from the homestead loan obtained and

the six hundred dollars put up by the said Baronis.

"Work to be completed about Oct. 1, 1927.

"Homestead loan to be obtained by Mr. and Mrs. F. Baroni, and all expenses such as cost of act of sale, taxes, etc., to be paid by them, but must come out of the $600.00 and Homestead Loan. If Probst & Picheloup are due any amount above homestead loan and $600.00 they must finance same by 2nd mortgage or otherwise."

Probst & Picheloup, the partnership, then directed its bookkeeper, Robert G. Williams, to purchase, in his name, a lot of ground selected by Mr. and Mrs. Baroni, which he did on August 25, 1927.

On September 14, 1927, Probst & Picheloup, the partnership, entered into the following written contract with Charles S. Young, contractor:

"This is an agreement between Chas. S. Young and Probst & Picheloup for the erection of a four room double cottage to be built on the corner of Desire and Derbigny Sts.

"House to be erected by Mr. Young all materials and labor is to be furnished by him and he is to be responsible for both.

"House is to cost $2,785.00 plus a commission of 10% and is to be finished as soon as possible or on Oct. 1st, 1927, one side at least will be ready for occupancy.

"Probst & Picheloup are to advance the weekly payroll as to the amount required and Mr. Young will supply a receipt by each workman for the amount that he received.

"Probst & Picheloup are also to pay all bills for material used on or before the completion of the work.

"Lean Bond will be placed on completion of the work. Fire Insurance policy will be placed with the Indemnity Ins. Co., and will be assumed with the bond by purchaser."

In accordance with his contract, Young erected the building, and ordered most of the material from plaintiff. The building was completed in the latter part of November, but, as the contractor had caused a financial difficulty to arise by running the cost of the building over and above the contract price, Clifford Probst and Frank Picheloup, as individuals, determined to have the property transferred into their names. Accordingly, Mr. Williams, in whose name the property was placed as a matter of convenience for Probst and Picheloup, transferred the property to the homestead which in turn on December 3, 1927, transferred it to Probst and Picheloup as individuals, subject to a homestead loan of $6,000. Probst & Picheloup, the partnership, then returned to Mr. and Mrs. Baroni the $600 which had been deposited with them on account of their contract and canceled the agreement.

Young, finding himself in financial difficulty, filed voluntary proceedings in bankruptcy and was adjudged a bankrupt on January 5, 1928.

The plaintiff filed its lien on December 17, 1927, and, therefore, the mortgage certificate obtained by Probst and Picheloup in the name of Robert G. Williams did not show any incumbrances against the property when defendants purchased it.

The present suit was filed against Clifford Probst and Frank Picheloup individually on March 6, 1928.

The first question presented is: Who was the owner of the property during the period of time from the beginning of the construction of the building until its completion and recordation of plaintiff's lien? The evidence clearly shows that Mr. Williams was merely a nominal party interposed by Probst & Picheloup and had no interest in the property personally.

The articles of the co-partnership of Probst & Picheloup were not in writing, therefore it was impossible to take title to the real estate in the name of the firm. Article 2836 of the R. C. C. provides:

"If any part of the stock of this partnership consist of real estate, it must be in writing, and made according to the rules prescribed for the conveyance of real estate, and recorded as is hereafter prescribed with respect to partnership in commendam."

In Lagarde vs. Dabon, 155 La. 26, 98 So. 744, 745, the court said:

"And even 'particular' partnerships (which are such as are formed for any business not of a commercial nature) must be reduced to writing and recorded if they are to include real estate. C. C. arts. 2835, 2836, 2848. All of which is, of course, in accord with the requirement of writing and recording in all that affects real estate."

See, also, Toelke vs. Toelke, 153 La. 697, 96 So. 536.

The firm of Probst & Picheloup was, therefore, without capacity to own real estate. We are convinced that it was the intention of Probst & Picheloup and Mr. and Mrs. Baroni that the lot and improvements would be transferred to them for $4,500 after the completion of the building. The contract between these parties and the manner in which Probst & Picheloup undertook to carry it out forces us to this conclusion. The $600 was paid under the terms of the contract on account of a three-room double cottage to be built, the total cost of the house and lot complete for $4,-500, free from all incumbrances, liens, or privileges. The fact that the contract provides that the homestead was to make a loan clearly shows this because a homestead would not make such a loan on property that was incumbered with liens or privileges. The only remaining parties who could possibly be considered the owners of the property from the time that the title was placed in Mr. Williams' name are the defendants herein. They are the sole partners in the firm of Probst & Picheloup, and both defendants personally handled the transaction.

The defendants further contend that the partnership should have been made a party to this suit, and that the individual partners cannot be held for a partnership debt unless the partnership is made a party to the suit. As this is a suit against the owners of the property under the provisions of section 12, Act No. 298 of 1926, and since the partnership was incapable of owning real estate, and the real estate was owned by the individual partners, the partnership was not a necessary party to this suit.

The district judge, after considering the testimony in the case, arrived at the conclusion that the defendants were the owners of the property, and we find no reason in the record to say that his conclusion in this respect is erroneous.

The evidence in the record convinces us that the material was used in the construction of the building in question, and that plaintiff's lien was properly recorded within the time provided by law. The relevant part of section 12 of Act No. 298 of 1926 reads as follows:

"Any person furnishing service or material * * * when a contract, oral or written has been entered into but no contract has been timely recorded, shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim."

This language is clearly applicable here.

For the reasons assigned the judgment appealed from is affirmed.