No. 3277

**Second Circuit**

---

**MOORE v. DOUGHTIE ET AL.**

---

(December 19, 1929.  Opinion and Decree.)
(January 31, 1930.  Opinion and Decree on Rehearing.)

---

M. C. Redmond, of Monroe, attorney for plaintiff, appellant.

McHenry, Montgomery, Lamkin & Lester, and George Gunby, of Monroe, attorneys for defendants, appellees.

REYNOLDS, J.  By this action Ross Moore seeks to recover judgment against

J. E. Doughtie, T. S. Sholars, and Rusher Culver, in solido, for $1,148, or, in the alternative, judgment against each of them for $382.66⅔, with legal interest thereon from judicial demand.

He alleges that they formed a partnership for the purpose of drilling for oil and gas, and to that end leased from him, at the price of $500 a month, under a contract terminable at their will, a drilling rig.

He further alleges that the lease was terminated on December 21, 1925, and that the price of the lease for the months ending November 21, 1925, and December 21, 1925, is unpaid.

He further alleges that he was compelled to have the rig torn down (presumably to enable him to remove it from where defendants had erected it) at an expense to himself of $72 for labor and of $24 for the premium on a policy of indemnity insurance against liability under the Workmen's Compensation Law for injuries that might be accidentally sustained by workmen engaged in tearing down the rig, and that he was compelled to pay to Ouachita Iron Works, Inc., $17 for repairs made by it at the instance of defendants on a part of the rig, and was also compelled to pay $35 for repairs to another part of the rig, to-wit, a pump, which repairs were rendered necessary by careless use of the pump by defendants.

The contract of lease is attached to and made part of the petition.

Various exceptions and pleas were filed by the defendants, and they also filed answers wherein, after reserving the benefit of their pleas and exceptions, should they be overruled, they denied that they were either ordinary or commercial partners.

The defendant Doughtie alleged that he only agreed to furnish a certain amount of money for the use of the enterprise, and that he had provided the amount agreed, and was not liable for any of the obligations sued on.

Defendants Sholars and Culver alleged that the lease was terminated on October 21, 1925, and the rig returned to plaintiff on that date, and was not used by them thereafter, and that they were not indebted to plaintiff on account of the lease price, and they denied that they were liable for the items of $72 and $24 and $17 and $35, or any of them.

On these issues the case was tried, and there was judgment in favor of the plaintiff and against defendant T. S. Sholars for $382.66, with legal interest thereon from December 21, 1925, until paid, and in favor of the plaintiff and against defendant Rush Culver for $382.66, with legal interest thereon from December 21, 1925, until paid, and in favor of defendant J. E. Doughtie and against the plaintiff, rejecting plaintiff's demand and dismissing his suit as against Doughtie. From this judgment the plaintiff appealed.

Defendants Sholars and Culver have answered the appeal, and allege that the judgment is, as to them, erroneous, and ask that it be reversed and plaintiff's suit dismissed.

## OPINION

The view that we take of the merits of the case renders it unnecessary, we think, for us to consider any of the pleas or exceptions filed by the defendants.

The first question to be determined by us is whether or not the defendants were commercial partners.

Whether a partnership is a commercial partnership, under article 2825 of the Civil Code, or an ordinary partnership, under article 2826 of the Civil Code, depends on

the intention of the parties and the nature of the business carried on under the agreement.

The partnership was created for the purpose of leasing land for the purpose of seeking the discovery of oil and gas thereon by boring wells and selling such oil and gas if discovered, and this was the nature of the business actually conducted by it; and the drilling rig the partnership leased from the plaintiff was an instrumentality for use to that end.

The engaging in this business did not constitute the defendants commercial partners. American National Bank v. Reclamation Oil Producing Association, 156 La. 652, 101 So. 10; Phillips v. Ray, 1 La. App. 584.

We do not deem it necessary to determine whether or not defendant J. E. Doughtie was only a partner in commendum, as asserted by him, for the reason that the evidence shows that he withdrew from the partnership on October 21, 1925, and that plaintiff was informed of that fact.

J. E. Doughtie testified:

"Q. Mr. Doughtie, what took place in the office of Mr. Tom Sholars on or about the 21st of October, with respect to your connection with the drilling of this well down there at Cane Hill, or Coco Bend?

"A. They sent for me to come to Mr. Sholars' office to meet them, and when I got there they said that they wanted to pay Mr. Moore five hundred dollars for a month's rent on the rig, and I first said that I wouldn't do it. That was for the reason that I had paid all of the five hundred dollars the month previous. Then they wanted me to go on a note for five hundred dollars, and I said: 'No, I won't do it, but I will give you my third, or fourth, or whatever I am responsible for, in cash,' which I did, and when I gave it, I took Mr. Moore's receipt for it, and I then told Mr. Moore that, as far as I was concerned, 'I am through with that whole

business down there, and you needn't look to me for any more rig money, and as far as I am concerned you can take your rig.' That is what I said to him in the office, and I repeated it to him on the street."

Mr. Moore himself, testified:

"Q. All right now, who paid you the October rent?

"A. Mr. Doughtie paid a third in cash and Mr. Sholars and Mr. Culver gave me a note for the balance.

"Q. When was that settlement made?

"A. That was on October 21st.

"Q. Where was that done?

"A. In Mr. Sholars' office, in the presence of Mr. Hal Goodwin.

"Q. And who all were present?

"A. Mr. Doughtie, Mr. Moore, Mr. Culver, Mr. Sholars, and Mr. Goodwin. * * *

"Q. Isn't it a fact that Mr. Doughtie told you at that time, sir, that, as far as he was concerned, he was out of the whole thing?

"A. Mr. Doughtie told me that he had been paying out all of the bills and was getting tired of it, and I told him that I didn't know anything about it. That was while we were going down the stairs, and he never told me he was out of it. * * *

"Q. You deny that he said he was out of the transaction?

"A. Well, I won't deny it. I think Mr. Doughtie made this remark to me. He said: 'I have put up money until I am tired of it, and I won't put up any more.' Now I believe Mr. Doughtie made that statement to me."

We are of the opinion that Mr. Doughtie withdrew from the partnership on October 21st, and that the plaintiff was informed of it at the time.

Mr. Culver testified:

"Q. What, if anything, was said up there between Mr. Doughtie and Mr. Moore that day about Doughtie being through with that contract? Just tell us fully and in detail how much you know?

"A. Mr. Doughtie was very much put out, apparently, about the money he had put in for the drilling of this well down

there, and he insisted that he would go no further and pay no further money after paying this, and that we could go ahead and do as we wanted to do with the thing but that he didn't want anything further to do with it, and that he wouldn't put up any more money. I do not say that I can give you the exact words that Mr. Doughtie used, but that is the substance of what he said, and it was so understood by Mr. Moore and all of the gentlemen present there.

"Q. What was Mr. Moore's attitude about that matter?

"A. My understanding of it was, that Mr. Moore was in accord; certainly he put up no objections toward Mr. Doughtie's actions in getting out and quitting. * * *

"Q. Now what subsequent negotiations were carried on, and by whom, concerning this lease?

"A. Mr. Sholars and I, knowing that Mr. Doughtie was going out, took the matter up with Mr. Moore and said to Mr. Moore that we had several prospects in view, and that we hoped to be able to sell enough of these leases down there to take care of the expense, inasmuch as Mr. Doughtie was going out and Mr. Longino didn't seem to take much of an interest further, to sell enough to pay him up for the rig and finish the well. It was with that understanding that the rig was left there. My own understanding of it was that it was a modification of the old contract, Doughtie getting out and Mr. Sholars and I going ahead under that arrangement with Mr. Moore. We had several negotiations, and I think the time was extended on two or three occasions that way, and I know that we spent time and money in trying to effect the sale of these leases so as to pay Mr. Moore.

"Q. About how many times did you talk with Mr. Moore subsequent to October 21st?

"A. Two or three times.

"Q. Was Mr. Doughtie present on these occasions?

"A. No.

"Q. Did Mr. Moore, or did he not, acquiesce in the suggestions made by you and Mr. Tom Sholars?

"A. Yes, he acted with us; we told him that if he got a job, why, he could take his rig; that if the rig would be of any use

to him, to go ahead and take it but that if he didn't get another job, then the rig might as well be down there as anywhere else. My memory is that the rig was not used at all after October 21st. * * *

"Q. Did you hear, at any time, Mr. Ross Moore, in that meeting up there in Mr. Sholars' office, told by Mr. Doughtie that the contract concerning this drilling rig was at an end and that he could go there and get his drilling rig?

"A. I don't remember the exact words that were used, but I did hear him make Mr. Moore acquainted with the idea that he, as far as that contract was concerned, was through with it, and that Mr. Moore would have to look to other people from then on."

Mr. Sholars testified:

"Q. Do you recall what, if anything, was said at that settlement by Mr. Doughtie to or in the presence of Mr. Moore concerning the termination of his relations with that affair?

"A. I distinctly remember that we arranged it with considerable trouble. I saw Mr. Doughtie and he finally agreed to assist us on that five hundred dollars, but, instead of signing a note to permit us to arrange for the five hundred dollars, he said that he would prefer to go ahead and pay his in cash, and my recollection is that it was generally discussed and that it was stated by him that that was just as far as he was going; that that was the end of his contribution or his subscription to that venture.

"Q. Mr. Moore was present at that time?

"A. Yes, sir.

"Q. Do you recall whether or not he stated that to Mr. Moore?

"A. We were all there; it was not a question of each of us being in different portions of the room; we were all right there together, and any remark addressed to one of us was addressed to all of us. * * *

"Q. Isn't it a fact that you persuaded Ross Moore to leave this rig on there under the terms of this contract until you could see whether you could put that deal over?

"A. Not only that deal, but in Shreve-

port and everywhere; we urged him to leave it there. * * *

"Q. And who asked Ross Moore to leave that rig down there, you and Rush Culver?

"A. Mr. Culver and myself, yes. * * *

"Q. All right, I will ask this question. Under what contract were the negotiations between you and Rush Culver and your friends, on the one hand, and Ross Moore on the other hand, being carried out?

"A. Subsequent to the payment of the 21st of October?

"Q. Yes?

"A. It would be very hard for me to say what contract it was, because this contract that we had there itself cancelled itself out. I was afraid he would go and get the rig, and both of us undertook to induce him to leave it there; I don't know that we had any contract about it staying there. * * *"

The defendants Sholars and Culver having induced the plaintiff, Ross Moore, to leave his rig in their possession after October 21, 1925, they owe him for the lease price of it thereafter.

However, not being commercial partners, they are not bound in solido for the price, but only each for his virile share.

We consider the items of $35 and $17 for repairs to the rig properly chargeable to Sholars and Culver. The repairs were rendered necessary by injury done to the rig while it was in their possession. But we do not consider them liable for the items of $72 and $24. It is not shown that Culver and Sholars had agreed to return the rig in a dismantled condition, and, in the absence of such an agreement, they are not liable for the cost of taking it down. Neither are they liable for the cost of the premium on the policy of indemnity against liability under the Workmen's Compensation Act for injuries to or death of workmen while engaged in dismantling the rig. This expense was for the indemnity of Moore personally.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended so as to increase the amount of the award to the plaintiff against defendant T. S. Sholars from $382.66, with legal interest thereon from December 21, 1925, until paid, to $552, with legal interest thereon from December 21, 1925, until paid, and so as to increase the amount of the award to plaintiff against defendant Rush Culver from $382.66, with legal interest thereon from December 21, 1925, to $552, with legal interest thereon from December 21, 1925; and that, in all other respects, the judgment appealed from be affirmed.

## ON REHEARING

ODOM, J. The defendants Doughtie, Culver, and Sholars leased a drilling rig from the plaintiff, Moore, agreeing to pay therefore a monthly rental of $500; the contract being in writing. Alleging that defendants had failed to pay the rental for two months, plaintiff brought this suit on the contract, praying for judgment against them in solido on the theory that defendants were commercial partners, and, in the alternative, if the court should hold that there was no commercial partnership but an ordinary one, then that he be awarded judgment against each of the defendants for his virile share of the amount due.

We found that Doughtie, one of the lessees, had withdrawn from the contract and had been released on October 21, 1925, up to which time all rentals on the rig were paid, and that he was not liable for rentals accruing subsequent to that date, and rejected plaintiff's demands as to him.

We further found that, after Doughtie withdrew, Culver and Sholars held the rig under a new contract or deal, and rendered judgment against each of them for one-half of the amount due. Culver and Sho-

lars applied for a rehearing, and alleged as errors:

"1. That, due to inadvertence and a mathematical error in calculation, the amount adjudged to be due by each of your appearers is stated to be $552.00, which said amount, in accordance with the reasons given in said opinion, should correctly be $526.00;

"2. That the Court herein is in error in that it has rendered judgment based on a cause of action different from that sued upon by plaintiff and set forth in the petition;

"3. That the Court is in error in that it has rendered judgment against your appearers in amounts in excess of that alleged in the petition to be due by them and demanded in the prayer thereof."

The first error complained of is patent. The writer of the opinion erred in his calculation. We could and would have corrected this error without granting a rehearing; our attention having been called to it. The rehearing was granted, however, in order that we might further consider the second and third alleged errors, to-wit, whether the court was warranted in granting judgment against Culver and Sholars under the new contract or deal, when none such had been alleged or mentioned in plaintiff's petition.

Plaintiff grounded his demand upon a written contract, to which Doughtie, Culver, and Sholars were all parties as lessees, and it is contended by counsel for Culver and Sholars that, in as much as plaintiff based his cause of action upon that contract, he can recover on no other.

No citation of authority is necessary to support the general propositions that a plaintiff cannot recover on a cause of action not alleged; that he cannot be permitted to establish by proof a cause of action not alleged in the petition without the consent, express or implied, of defendant;

that what a party does not allege he cannot prove; and that, if a plaintiff declare on a written contract, he cannot give in evidence one by parol. These general propositions are supported, not only by the Code of Practice, but by an unbroken line of decisions from our earliest jurisprudence down to date.

But to the above general rules there is this exception, that under a prayer for general relief, as in this case, the character of the action may be changed by the introduction of testimony without objection. We know of no rule more firmly established in our system of pleading and practice than this, that the effect of admitting testimony not admissible under the pleadings, without objection, is to enlarge the pleadings, and that, although the testimony thus received without objection be contrary to or beyond the allegations contained in the pleadings, the adverse party is bound by its effect; that, unless the testimony when offered is objected to and a bill reserved, it will be considered as responsive to an allegation in an amended petition filed with the consent of the opposite party. Powell v. Aiken & Gwinn et al., 18 La. 321; England v. Gripon, 15 La. Ann. 304; Draper v. Richards, 20 La. Ann. 306; Fontenot v. Manuel, 46 La. Ann. 1373, 16 So. 182; State v. Lundie & Riggs, 47 La. Ann. 1596, 18 So. 636; Bell v. Globe Lumber Company, Ltd., 107 La. 725, 31 So. 994; Wells et al. v. Blackman, 121 La. 394, 46 So. 437; Parish School Board v. Alexander, 125 La. 808, 51 So. 906; Houston River Canal Co. et al. v. Reid, 127 La. 630, 53 So. 887; Blodgett Const. Co. v. Board of Com'rs, 153 La. 623, 96 So. 281.

Testimony with reference to a new or subsequent contract between plaintiff, on the one hand, and Culver and Sholars on the other, was clearly inadmissible under the pleadings. But Culver and Sholars

were called as witnesses, and, without objection by their counsel, testified that, after Doughtie withdrew from the original contract, they induced plaintiff to let them keep the drilling rig, as they still had hopes of raising funds with which to complete the well which they had started. At page 56 of the record, Mr. Culver stated that Doughtie withdrew from the contract, and, on being asked, "What was Mr. Moore's attitude about that matter?" he replied:

"My understanding of it was that Mr. Moore was in accord; certainly he put up no objections toward Mr. Doughtie's actions in getting out and quitting."

The testimony abundantly shows that Doughtie withdrew with the consent of all parties. The plaintiff, Moore, on direct examination, seemed to be unwilling to admit that Doughtie had withdrawn and been released, but on cross-examination was asked specifically whether he denied that he was, and said that he would not deny it. We held in our original opinion that the contract entered into in July was brought to an end on October 31st, and, further, that a new contract was made between the plaintiff, on the one side, and Culver and Sholars on the other. That finding is amply supported by the record. On page 57 of the record, Mr. Culver was asked:

"Now what subsequent negotiations were carried on and by whom concerning this lease?

"A. Mr. Sholars and I, knowing that Mr. Doughtie was going out, took the matter up with Mr. Moore and said to Mr. Moore that we had several prospects in view, and that we hoped to be able to sell enough of these leases down there to take care of the expense, inasmuch as Mr. Doughtie was going out and Mr. Longino didn't seem to take much of an interest further, to sell enough to pay him up for the rig and finish the well. It was with that un-

derstanding that the rig was left there. My own understanding of it was that it was a modification of the old contract, Doughtie getting out and Mr. Sholars and I going ahead under that arrangement with Mr. Moore. We had several negotiations and I think the time was extended on two or three occasions that way and I know that we spent time and money in trying to effect the sale of these leases so as to pay Mr. Moore."

Mr. Sholars gave similar testimony with reference to the new arrangement. Counsel for Culver and Sholars was present and offered no objection when this testimony was given.

Counsel for Culver and Sholars says in brief that he was not permitted to cross-examine plaintiff with reference to the new arrangement. Our examination of the record shows that counsel made no effort to cross-examine plaintiff on this particular point. Plaintiff was the first witness on the stand, and, as shown by page 3 of the record, was asked by his attorney:

"Now just state what your contract was with Mr. Rush Culver, Mr. T. S. Sholars, Mr. J. E. Doughtie and Mr. A. H. Longino?"

Counsel for defendants Culver and Sholars urged the objection that the testimony was objectionable as not being the best evidence, which objection was sustained.

As the trial progressed, it developed that Culver and Sholars had signed a written cancellation of the lease and delivered the rig back to plaintiff on December 21st. Counsel sought to prove by plaintiff that his clients had repeatedly told him prior to that time that he might take the rig back; the purpose of this testimony being to show that the contract of lease was terminated on October 21st, when Doughtie withdrew. Counsel for plaintiff had the evidence excluded on the ground that

the written release, signed by Sholars and Culver on December 21st, was the best evidence. The testimony last mentioned had no reference to the original lease contract, but to the written release of the rig signed by Culver and Sholars.

Counsel for Culver and Sholars had ample opportunity to cross-examine Moore with reference to the new arrangement because, while plaintiff was on the stand, he was asked why he allowed the rig to remain on the lease after Doughtie withdrew, and he said that he did so because Culver and Sholars requested him to do so. On page 24 of the record, plaintiff said:

"They (referring to Culver and Sholars) requested me to leave it there and give them some more time. They were trying to promote the proposition and wanted me to leave the rig there until they saw what they could do on it."

He further stated that the rent from October 21st to November 21st was not paid when due, and that he saw Culver and Sholars about it because they had requested him to let them retain the rig. The testimony, therefore, with reference to the new arrangement between the parties, came from the plaintiff, and counsel for Culver and Sholars could have, if he had seen fit, cross-examined plaintiff on that point, but made no effort to do so, nor did he object to the testimony when offered. Mr. Culver and Mr. Sholars were later called to the stand as witnesses in their own behalf, and gave testimony with reference to the new contract, as above stated. This testimony was voluntarily given, and no objection whatsoever was made by any one. All such testimony could have been excluded on objection, but, the same having been admitted without ob-

jection, the parties are bound by it. The pleadings have been so enlarged that the court is fully warranted in rendering such judgment as the testimony justifies. The testimony thus admitted without objection has so enlarged the pleadings as to set out a new cause of action. In a supplemental brief filed by counsel, he quotes the following from the case of Mazureau v. Morgan, 25 La. Ann. 281:

"When the contract is proved, it is the law between the parties, and the parties must succeed or fail according to the terms of that contract. The court is not at liberty to substitute another, based upon the presumed assent of the parties."

A reading of that opinion will disclose that plaintiffs brought suit for their fee on a contract which the court held to be contrary to an express prohibitory law. Their contract being illegal, they could not recover, of course, whether they had based their cause of action upon a written contract or a verbal one. The court in that case said, however, that, if plaintiffs had sued on a contract and had failed to prove it, but had proved without objection the value of their services rendered, they could have obtained judgment upon a quantum meruit.

For the reasons assigned, it is therefore ordered and decreed that our former judgment be reinstated and made the final judgment of this court, except as to the amount stated to be due by each of the parties, which amount is reduced from $552 to $526.

DREW, J., takes no part.