153 So.2d 425 (1963)
Harold T. SHALETT, Plaintiff-Appellee,
v.
BROWNELL-KIDD COMPANY et al., Defendant-Appellants.
No. 5785.
Court of Appeal of Louisiana, First Circuit.
May 3, 1963.
Rehearing Denied June 3, 1963.
*426 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, by George Denegre, New Orleans, Stafford & Pitts, by Grove Stafford, Alexandria, for appellants.
Talbot, LeSueur & Talbot, by Leon J. LeSueur, Napoleonville, Milling, Saal, Saunders, Benson & Woodward, by K. J. Gilly, New Orleans, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
REID, Judge.
This is a suit for declaratory judgment brought by Harold T. Shalett against Brownell-Kidd Company, a partnership, the present and former members of said partnership and the owners of a mineral leasehold interest affecting the East Half and the East Half of the Northwest Quarter of Section 65, T 16, S, R 14 E, S.E.L.D., West of the Mississippi River, in Assumption Parish.
The record shows that Harold E. Shalett, plaintiff-appellee, purchased from W. H. Ellis, with full warranty, a 3/120 of the whole of any oil, gas or other minerals, except sulphur, and a proportionate part per long ton of sulphur produced or to be produced from the East Half and the East Half of the Northwest Quarter of Section 65, T 16, S, R 14 E., Assumption Parish, Louisiana. Harold E. Shalett purchased the royalty interest on January 4, 1954, by instrument recorded February 4, 1954, COB 99-A, page 377, Assumption Parish. W. H. Ellis, plaintiff's vendor, had purchased the same 3/120 interest from Ella Kidd, Roland E. Kidd, Sr., Hugh E. Kidd, Sr. and Margaret Kidd Siener, on December 9, 1953, by act recorded January 2, 1954, COB 99A, page 11, Assumption Parish. The warranty in this deed was limited to the return of the cash consideration. At the time of the latter sale the vendors were members of the partnership of Brownell-Kidd Company.
Brownell-Drew Lumber Company, Ltd. purchased from Gus and William Drews the East Half of Section 65 on May 9, 1900 by act recorded May 11, 1900 in Book 45, page 435 of the conveyance records of Assumption Parish. The same corporation purchased from Byron Eels the E½ of the NW¼ of Section 65 on June 8, 1901, by act recorded June 26, 1901, in COB 46, page 485.
Defendants contend the stockholders of Brownell-Drews Lumber Company, Ltd. liquidated the corporation, in consideration of the surrender of all outstanding capital *427 stock, conveyed to the eight stockholders all of the assets belonging to said corporation, including the E½ of the E½ of the NW¼ of Section 65, T 16 S, R 14 E, Assumption Parish, Louisiana. The eight stockholders were Claire Brownell, Norma Brownell, Charlestrom, Anna Widmer Brownell, Dr. C. R. Brownell, Jr., Roland E. Kidd, Sr., Margaret Kidd Siener, Ella Kidd and Hugh Kidd. All of the stockholders executed the transfer from the corporation in liquidation to the stockholders which transfer was dated August 18, 1951, recorded August 23, 1951 in COB 81, page 507, records of Assumption Parish, Louisiana. The liquidators appointed were Dr. C. R. Brownell, Jr., Mrs. Claire Brownell, and H. E. Charlstrom.
Two days later, August 20, 1951, by instrument recorded August 23, 1951 in COB 81, page 517, the same eight persons sold to Brownell-Kidd Company, a partnership composed of the same eight persons (which partnership was also created by instrument dated August 20, 1951, all of the property which had been conveyed by the corporation in liquidation to the stockholders. In the liquidators' sale, the articles of partnership and the sale from the stockholders to the partnership, the interest of the various eight original stockholders was given as follows:

Mrs. Claire Brownell .26133%
Mrs. Norma Brownell Charlstrom .26133%
Mrs. Anna Widmer Brownell .18489%
Dr. C. R. Brownell, Jr. .09245%
Roland E. Kidd, Sr. .05000%
Mrs. Margaret Kidd Siener .05000%
Mrs. Ella Kidd .05000%
Hugh Kidd .05000%

It is the contention of plaintiff that actually the interest set forth in all of those documents amounted to only 1% of the total interest of the parties in and to the properties, while the defendants maintain that the interest meant to be conveyed was 100% and the figures contained in the three documents were in error. By act dated October 30, 1953 the same eight parties, appearing individually, and the liquidators, entered into an act of correction and ratification wherein they stated it was their intention to convey 100% interest in all of the property in all of the three documents and that the error had resulted from the use of both the decimal and percentage sign in describing the interests. This correction and ratification was acknowledged on various dates and recorded June 11, 1954 in Conveyance Book 101-A, page 412, and recorded again June 14, 1954 in Conveyance Book 101-A, page 496, and recorded a third time on June 23, 1954 in Conveyance Book 102-A, page 69.
On January 31, 1952, the partnership of Brownell-Kidd Company granted an oil, gas and mineral lease to The Atlantic Refining Company by act recorded February 23, 1952, COB 93A, page 503.
On May 27, 1954 by act recorded June 1, 1954, Conveyance Book 83, page 673, Ella Kidd and Hugh E. Kidd, Sr. conveyed all of their right, title and interest in the partnership of Brownell-Kidd Company to J. Harry Henderson, Jr. On May 31, 1956 by act recorded in COB 116-A, page 161, Ella Kidd and Hugh E. Kidd, Sr. ratified and confirmed the conveyance to Henderson.
The partnership brought suit against Ella Kidd, Hugh E. Kidd, Sr. and J. Harry Henderson, Jr., because of the above conveyance to Henderson, being suit No. 24,007 on the docket of the 16th Judicial District Court, in which plaintiff alleged that Ella Kidd and Hugh E. Kidd did not under the articles of partnership have the right to convey any interest in the partnership. The matter was settled by mutual agreement between the parties and Henderson was recognized as a partner in the place of Ella Kidd and Hugh E. Kidd, Sr.
The partnership refused to recognize the royalty interest of the plaintiff herein and hence this suit.
The plaintiff brought this suit on January 28, 1958, seeking a declaratory judgment *428 which would recognize the validity of the 3/120 royalty interest acquired in the royalty deed mentioned above. The parties owning mineral leasehold interests granted by the defendant Dr. C. R. Brownell, Jr. as representative of the partnership and by the partners, were also made defendants originally. The partnership and its members filed a general denial, while the other defendants owning mineral leasehold interests were dismissed from the proceedings on exceptions of no cause of action, but subject to a stipulation to the effect that they would affirmatively agree to be bound by the judgment to be rendered by the Court fixing the rights of the plaintiff and the fee owners with regard to the royalty interest in controversy.
On October 9, 1961, the case was heard on the merits and on April 27, 1962 the Court rendered a judgment in favor of the plaintiff, recognizing him as owner of the 3/120 royalty interest as prayed for and reserving to the plaintiff the right to proceed against any and all parties who have produced minerals from the said land without payment on account of the royalty interest herein recognized for an accounting and for damages. From said judgment the defendants have prosecuted this appeal.
The validity of the royalty instrument sued upon herein depends upon whether at the time of the transfer by Ella Kidd, et al. to W. H. Ellis, the vendors owned a valid undivided interest in the property which they could convey or whether title to the property in question was vested in the partnership and thus under the terms of the articles of partnership no partner could, during the existence of the partnership, assign his share in the assets of the said partnership.
The position of the plaintiff is that the Brownell-Kidd Company was on August 20, 1951, the date of its acquisition of assets, a commercial partnership incapable of owning immovable property and therefore, title to such property vested in the individual partners; and alternatively, if on the date of its acquisition of said assets it was an ordinary partnership, it was incapable of owning immovable property because its articles of partnership had not been properly recorded on that date, and had never been properly recorded, and since proper recordation is a prerequisite of ownership of immovable property, even by an ordinary partnership, the property allegedly acquired by the partnership was vested in the individual partners. The plaintiff also contends the admission of Mr. Henderson to the partnership, accompanied by an alleged accounting among the partners, was a dissolution of the partnership and, therefore, the assets passed to the individual partners subject to the prior recorded title of the plaintiff to the royalty in question. Lastly, plaintiff contends if the partnership was capable of acquiring immovable property on August 21, 1951, the deed in favor of the partnership transferred only a 1% interest in the subject property, as did the prior liquidators' deed from the corporation, and accordingly the vendors of W. H. Ellis, plaintiff's ancestor in title, were entitled to receive from the liquidators a 99% interest in the subject property, that is, 99% of their original 20%, with the result that when the conveyances were corrected to cover full interest, the rights previously acquired by plaintiff under a prior recorded title were effective.
The defendant on the other hand maintains the partnership is an ordinary partnership which can own immovable property; it was properly organized; all requirements of the law were met in regard to recordation; and as the partnership articles prohibited the individual partners from assigning their share of the assets, the four vendors of Mr. Ellis had no authority to convey the property in question, and, therefore, the royalty sale was invalid and the plaintiff has no interest in the property.
The Trial Judge did not pass upon the question whether the partnership was a commercial partnership or an ordinary partnership, although he indicated he felt the plaintiff's argument had some merit. Instead, he based his decision on the question *429 of the validity of the recordation of the partnership agreement, holding it had not been properly recorded as required by law and this improper recordation not only had effect as to third parties but had effect even among the partners themselves. He further ruled the admission of Mr. Henderson into the firm caused a dissolution of the original firm and, therefore, the dissolution vested the assets in the individual partners and under the rule of after acquired property the plaintiff's royalty interest was valid. The Trial Judge did not pass upon the question of the percentage interest which was acquired by the partnership.
There is no dispute as to the fact that a commercial partnership under Louisiana law cannot own immovable property.
LSA-Civil Code Article 2824 states:
"Partnerships are divided, as to their object, into commercial partnerships and ordinary partnerships."
Commercial partnerships are defined under Article 2825 as follows:
"Commercial partnerships are such as are formed:
"1. For the purchase of any personal property and the sale thereof, either in the same state or changed by manufacture.
"2. For buying or selling any personal property whatever, as factors or brokers.
"3. For carrying personal property or passengers for hire, in ships, vessels or in any other vehicle of transportation."
It is well established by the jurisprudence that commercial partnerships are exclusively confined to movable property and if the firm owned immovable property the partners became co-owners of it, in their individual capacity. Smith v. Sinott, 44 La.Ann. 51, 10 So. 413; Brinson v. Monroe Automobile & Supply Co., 180 La. 1064, 158 So. 558, 96 A.L.R. 1206; Skillman v. Purnell, 3 La. 494; McKee v. Griffin, 23 La.Ann. 417, 419; Baca v. Ramos, 10 La. 417, 420; Hall v. Sprigg, 7 Mart. (O.S.) 243, 244; Tippett v. Jett, 3 Rob. 313; Millaudon v. New Orleans & C. Railroad Co., 3 Rob. 488.
Ordinary partnerships under Article 2826 are defined as:
"Ordinary partnerships are all such as are not commercial; they are divided into universal and particular partnerships."
Particular partnerships are defined under Article 2835 as:
"Particular partnerships are such as are formed for any business not of a commercial nature."
Under Article 2836:
"If any part of the stock of this partnership consist of real estate, it must be in writing, and made according to the rules prescribed for the conveyance of real estate, and recorded as is hereafter prescribed with respect to partnership in commendam."
The test for determining whether or not a partnership is a commercial partnership under Article 2825 of the LSA-Civil Code or an ordinary partnership under Article 2826, depends upon the intention of the parties and the nature of the business carried on under the agreement. American National Bank of Shreveport v. Reclamation Oil Producing Association of Louisiana, 156 La. 652, 101 So. 10; Moore v. Doughtie, 14 La.App. 407, 126 So. 235, 236.
The purposes for which the Brownell-Kidd Company was formed on August 20, 1951, are set forth in the articles of partnership as follows:
"That the said parties hereby mutually agree to become partners in business to buy, own and sell timber, timber lands, marsh lands, and other real estate; buy, sell and deal in lumber, building material and other wood products; buy, sell, and deal in all kinds of goods, *430 wares, merchandise and produce; buy, sell and deal in oil, gas, mineral leases, mineral rights and royalties; lease land for all purposes; to buy, hold, own, occupy, use sell, lease, hire, pledge, hypothecate, mortgage and chattel mortgage real and personal property in connection with such business, and to prosecute and carry on any and all other business, trade or matter connected with or in any way incidental to the purposes aforesaid * * *."
The articles of partnership also provide in paragraph XIV:
"Neither partner shall without the consent of the other: * * * assign, mortgage or charge his share in the assets or profits of the partnership or any part of such share. * * *"
Insofar as the nature of the business carried on by the partnership, the record clearly shows that from the time the partnership was formed and the assets transferred, the partnership was engaged in dealing with immovable property, primarily in the realm of oil and gas business.
Dr. Brownell, the managing partner, testified as follows:
"Q: What business has been carried on by the Brownell-Kidd partnership?
"A: Dealing with these lands, oil and gas leases.
"Q: When did you start the business?
"A: We started back in Brownell-Drews and just carried on the same way with Brownell-Kidd.
"Q: Were there ever any interruptions?
"A: No.
"Q: Has the partnership ever dealt in personal property?
"A: No.
"Q: Has the partnership ever dealt in manufacture or change of personal property?
"A: No.
"Q: Has the partnership ever dealt or bought or sold personal property as a factor or broker?
"A: No.
"Q: Has the partnership ever carried personal property for hire?
"A: No.
"Q: Has the partnership ever carried persons or property for hire?
"A: No.
"BY THE COURT:
"Q: Just what is the character of this land, swamp land?
"A: Yes sir.
"Q: Any timber on it? Sold any timber off of it?
"A: Very little. Just regrowth. Very little timber to be sold. Drill for oil and gas.
"Q: That's all."
Mr. Trahan who was the Certified Public Accountant for the firm testified as follows:
"Q: As auditor for the Brownell-Kidd Company books would you know what business the company was in?
"A: Yes.
"Q: And what was that?
"A: They owned land and rented land for oil development. Collected rent and royalty interest.
"Q: When did they start in this business?
"A: Brownell-Drews Lumber Company Limited actually had some *431 leases and the partners continued to engage in the renting of land.
"Q: What other business?
"A: No other business.
"Q: What became of the income from the land, the renting and royalty income?
"A: The income was paid into the partnership and profits proportionately paid to each partner."

* * * * * *
"A: The partnership did have certain investments in bonds and in stocks. Upon the advice of investment counselors to protect the partnership's interests it did sell certain bonds and then bought other bonds but it was not in the business of such as buying and selling bonds.
"Q: That's a conclusion on your part, that they were not in the business, is that correct?
"A: I am familiar enough with the affairs of the partnership and have consulted with the investment counselors to the effect that I think I am able to substantiate the fact that they were not in that business."
Mr. Leonard C. Wise, the attorney representing the partnership for many years testified the business of the partnership was the leasing of land and collection of royalties and to the best of his knowledge the partnership had never dealt in the purchase of personal property nor the sale thereof in either the original state or changed by manufacture.
The plaintiff failed to introduce any evidence at the trial to contradict the above testimony, nor did plaintiff show the partnership had engaged in any business other than as testified by Mr. Brownell and Mr. Trahan. Plaintiff failed to show the partnership had operated as a commercial partnership. In alleging the partnership was commercial plaintiff took the position the nature of the business carried on by the partnership was immaterial and only the purpose for which the partnership was established is important. The plaintiff attempted to read into the purposes set forth in the partnership agreement a conclusion that the partnership was formed to buy, sell and deal in lumber, building materials, wood products, goods, wares, merchandise, produce and personal property, and completely ignored all other purposes set forth in the agreement.
The plaintiff also advanced a rather ingenious theory that the status of the firm and its ability to own immovable property had to be established as of August 20, 1951 the day it acquired the assets of the corporation, arguing that the day the partnership acquired the assets was the same day in which it was created, and therefore, there could not have been any prior history of firm business or activity which could affect the nature or status of the firm. This argument is without merit.
Under the established jurisprudence, landowning partnerships engaged in oil, gas and timber activities are ordinary partnerships. An examination of the purposes and the business actually engaged in by the partnership in question clearly shows that it meets the test set forth in the cases of Moore v. Doughtie, supra; American National Bank of Shreveport v. Reclamation Oil Producing Association of Louisiana, supra; Wunsch v. Noel, La.App., 177 So. 92.
A further argument advanced by plaintiff is that even if the partnership was capable of owning immovable property, and even if the partnership did actually acquire the land conveyed to it on August 20, 1951, the admission of a new partner, accompanied by an alleged accounting, dissolved the partnership and thus vested title at the time of the admission or alleged accounting in the individual partners and, under the doctrine of after acquired title the plaintiff *432 acquired a valid royalty interest. This argument is not in line with the jurisprudence which is well established, as was set forth by the Louisiana Supreme Court in the case of Posner v. Little Pine Lumber Co., 157 La. 73, 102 So. 16, wherein the Court held the sale of a partnership interest does not dissolve the partnership. See also Goldman v. General Supply Co., La.App., 6 So.2d 778.
Plaintiff attempted to distinguish the Posner case by stating it had not overruled earlier and contrary jurisprudence but had merely introduced into the law the concept that in order for a partnership to be dissolved by change in the firm membership, the change must be accompanied by an accounting or statement of partnership affairs setting forth the partnership assets and liabilities and showing the net share due each partner. He then attempted to conclude that an audit made for the fiscal year ending May 31, 1957 was in effect an accounting to the partners, which, under plaintiff's view of the Posner case, would amount to a dissolution. A copy of that audit is in the record and an examination of it shows more than an audit showing the financial position of the partnership as of May 31, 1957. There is a similar audit introduced in the record showing the financial situation of the partnership as of May 31, 1958. The audits in themselves are of no significance.
A careful reading of the Posner case does not justify plaintiff's position. In that case the Supreme Court merely commented on the fact that the Court of Appeal had conceded there was no evidence in the record showing the partners had made a statement of partnership affairs. Nowhere in the Posner case is there anything to indicate that a personal change, coupled with an audit, amounts to a dissolution.
LSA-Civil Code Article 2876 reads as follows:
"A partnership ends:
"1. By the expiration of the time for which such partnership was entered into.
"2. By extinction of the thing, or the consummation of the negotiation.
"3. By the death of one of the partners, or by his interdiction.
"4. By his bankruptcy.
"5. By the will of all the parties, legally expressed, or by the will of any of them, founded on a legal cause, and expressed in the manner directed by law."
There is nothing in the record which would indicate that any one of the conditions set forth in the above Code article has occurred and therefore it cannot be said that the partnership has been terminated.
Plaintiff argues the conveyance by Brownell-Drews Lumber Company Limited in Liquidation to the shareholders and the conveyance from the shareholders to the partnership failed to transfer 100% interest in the subject property and only transferred 1% interest and therefore the four ultimate vendors of plaintiff's ancestor in title at the time of their conveyance (even if it should be found that the partnership could own immovable property) were entitled to receive from the liquidators 99% of their 20% interest in said land. This argument is based upon the fact that both a decimal point and percentage sign were used in setting forth the interests conveyed, thus leading to some confusion as to what interest was actually conveyed. Plaintiff maintains as the royalty deed by which his ancestor in title acquired was filed and recorded in Assumption Parish prior to the recordation of any of the corrective instruments, he was entitled to rely upon the public records in dealing with immovable property, and since all that was shown on the public records of Assumption Parish was a conveyance of 1% interest, and since there was no showing that he was not in good faith, he was entitled to receive 99% of 20% interest in the property in question.
An examination of the conveyance from the corporation in liquidation to the shareholders *433 (Plaintiff's Exhibit 4) which was on file in Assumption Parish at the time his ancestor in title acquired the property in question, clearly shows that it was the intent of all of the parties to convey all of the assets which the corporation had to the stockholders. The instrument in question recites that "in consideration of the surrender of the outstanding capital stock of the Brownell-Drews Lumber Company, Limited in Liquidation, unto the hereinabove named Liquidators, in the following amounts * * * aggregating the sum of 625 shares and being all of the outstanding capital stock of the Brownell-Drews Lumber Company Limited, in Liquidation, and in consideration of assuming the indebtedness and liabilities of the Brownell-Drews Lumber Company Limited, in Liquidation, and for other good and valuable consideration, said Liquidators did and do by these presents, grant bargain, sell, assign, convey, transfer, set over and deliver unto the following, to-wit:" (Emphasis supplied). The deed then lists the shareholders and their interests, using both the decimal and percentage sign and said in the following described property, to-wit:

"All the rights, titles, interests, shares, demands and ownership in and to all the real estate, swamp, marsh and timber lands, timber, oil and gas wells, royalties, mineral leases and mineral rights wherever situated and of whatsoever nature in the name of the Brownell-Drews Lumber Company Limited and/or Brownell-Drews Lumber Company Limited, in Liquidation, and particularly the following to-wit." (Emphasis supplied)
Surely anyone reading this instrument could determine that it was the intention of the parties to convey 100% interest in all of the property of the corporation.
The deed from the stockholders to the partnership (Plaintiff's Exhibit 5), which was also on record in Assumption Parish prior to the recordation of the royalty deed to Ellis, recites the stockholders transferred "all of their rights, titles, interests, shares, demands and ownership in and to all the real estate, swamp, marsh and timber lands, timber, oil and gas wells, royalties, mineral leases and mineral rights wherever situated and of whatsoever nature acquired by them from the Brownell-Drews Lumber Company Limited in Liquidation, on the 18th day of August, 1951." This would indicate the stockholders were conveying to the partnership all of the property acquired by them from the corporation in liquidation.
It is self evident the error in the use of both decimal and percentage sign is a typographical error and the intention of the parties was to convey in each deed a 100% interest in and to all the property involved. This error was patent upon the face of the record and was not such an error as would bring into effect the public record doctrine.
If plaintiff's theory was to be adopted, the corporation would not have been completely liquidated at the time of the transfer to the stockholders and as he has failed to show any other deed by which the stockholders acquired the balance in the corporation, it would logically follow, if his theory was adopted the balance of the interest in the property is still in the corporation, which, of course, is not the case. It would not be the intention of the parties to convey all of their stock in the corporation for 1% of the assets.
An additional argument by the plaintiff, in which the Trial Judge was in agreement and one of the points upon which he based his reasons for judgment, was that the partnership, even if held an ordinary partnership, was still incapable of owning immovable property because its articles of partnership were not properly recorded on August 20, 1951 or at the time of the trial, and, therefore, since proper recordation is a prerequisite to ownership of immovable property, even for an ordinary partnership, the partnership was not capable of owning immovable property and *434 the property vested in the individual partners who had valid title when they conveyed to plaintiff's immediate vendor.
LSA-Civil Code Article 2836 provides if any part of the stock of the partnership consists of real estate, it must be in writing, and made according to the rules prescribed for the conveyance of real estate, and recorded in the same manner as a partnership in commendam.
Civil Code Article 2846 which sets forth the procedure for recording a partnership in commendam agreement states:
"* * * [i]t must be signed by the parties in the presence of one or more witnesses, and shall be recorded in full by the officer authorized to record mortgages in the place where the principal business of the partnership is carried on. * * *"
Article 2847 reads:
"The record mentioned in the preceding article shall be made in six days from the time of the execution of the contract, in the place where the principal establishment is situated, and if there are more than one, then allowing one day for every two leagues distance between such principal establishment and the others."
Article 2848 provides:
"The officer authorized to record mortgages, shall keep a separate book for the purpose of recording acts of partnership, which shall be, at all office hours, open for the inspections of any person who may choose to consult the same, and shall receive the same fees to which he is entitled for the recording of mortgages and for certificates and copies. When the act is under private signature, the record shall be only made on the acknowledgment of the act, before a recorder, a notary, or the person authorized to make the record, or by a proof of the execution made in the same manner by one of the subscribing witnesses."
In the instant case the record discloses that the articles of partnership were signed and acknowledged on August 20, 1951 and recorded on August 24, 1951, in St. Mary Parish, the principal place of business of the partnership. There is no dispute St. Mary Parish was the principal place of business of the partnership. The record shows that Mr. Leonard C. Wise, attorney at law, who represented the Brownell-Drews Lumber Company Limited, in Liquidation, and who prepared the articles of partnership, personally presented the partnership articles to the Clerk of Court of St. Mary Parish for recordation. The record shows there is no special partnership book in St. Mary Parish and partnerships are customarily recorded in the conveyance records. The partnership articles in question were recorded in the conveyance records only, and not in any other book.
Mr. Benny A. Blakeman who has been Clerk of Court in St. Mary Parish for many years testified as follows:
"Q: How long have you been Clerk of Court?
"A: Since May of 1952.
"Q: Were you familiar with the clerk's office prior to becoming clerk of court?
"A: Yes sir.
"Q: Is there a partnership book in the Parish of St. Mary?
"A: No, sir.
"Q: Where are partnerships recorded in the Parish of St. Mary?
"A: In the conveyance records.
"Q: How are these indexed?
"A: They are double indexed, both the vendor and vendee.

*435 "Q: What books are there in your office?
"A: I have mortgage, general mortgage, chattel mortgage, conveyance, donation, charter books, and then of course, marriage license books, etc.
"Q: What is the charter book?
"A: Charter book is to, for recordation of incorporations. It dates back to 1913. Previous to that it was in the mortgage records.
"Q: And partnership articles are they ever recorded in the charter book?
"A: They have been, if so, unless an error would be made, it would be by request of the person sending it in. It would also go in my conveyance records. The minute they would get it it goes in the conveyance, however, by request we will put them in the charter book. I listened to the discussion here this morning by Mr. Shinn who is very familiar with the records in St. Mary but by request I made a check back to 1946 and I found three are in my charter book, two evidently by request being there are also the originals in the conveyance records and one I can only state that it is very possible there must have been an error on one of the deputy's part due to the fact there was so many articles with this, co-partnership is what it was, and possibly the deputy didn't read it through that the name of this corporation, she just assumed it was that being they had so many articles attached, there were seventeen articles attached to this partnership. It is in the charter book.
"Q: The two that were by request, were those the ones that Mr. Shinn referred to?
"A: No sir. One was, yes sir, and one was previous to that, about 1956 I think. Some oil company.
"Q: In 1956?
"A: I think so. It could be 1958 but I think the deputy told me 1956."
CROSS-EXAMINATION:
"Q: If the Brownell-Kidd Company had requested you to record the articles of partnership in the charter book you would have done so, is that right?
"A: We would have naturally placed it in the conveyance book.
"Q: I said that if the Brownell-Kidd Company would have requested you to record the articles of partnership in the charter book you would have done so?
"A: We would have done so. Any instrument at the request of any person we will place in any book just so we first place it in the book that we feel it should be placed in." (Tr. 346, 347, 348)
Mr. William T. Shinn, a special abstractor in both St. Mary and Assumption Parishes, testified on behalf of plaintiff that St. Mary Parish did not have a partnership book as such, and some partnership agreements are recorded in the charter records and some in the conveyance records but the only partnership agreements he had found recorded in the charter book were those after the date of the filing of this suit. Mr. Shinn further stated if he should be examining a title in St. Mary Parish and there was a partnership involved in the title and the articles had been recorded, he would discover the same in his title examination.
The plaintiff takes the position since the articles of partnership were not recorded in a partnership book but in the conveyance records only, there had been a noncompliance with the legal prerequisite and *436 therefore, the partnership could not own immovable property. It is important to point out here that the plaintiff's contention is not concerned with the question of notice to third parties, but, as he states himself, is concerned with the compliance or non-compliance by the partnership of the legal prerequisite of firm's ownership of immovable property.
There is no jurisprudence bearing directly on point at issue herein. Cases cited by the plaintiff wherein the Courts have held that insofar as an ordinary partnership which owns immovable property is concerned the articles must be reduced to writing and recorded, are Toelke v. Toelke, 153 La. 697, 96 So. 536, and Madison Lumber Co. v. Picheloup, 12 La.App. 196, 125 So. 175. However, these cases deal with situations involving lack of written partnership agreements rather than recordation. The cases do not involve the effect of partnership agreements between the parties themselves. In addition to those cases, the plaintiff relies on Lagarde v. Dabon, 155 La. 25, 98 So. 744, and Murrell v. Murrell, 33 La.Ann. 1233. These cases deal with the legality of universal partnerships which must be in writing and recorded (as in the case of ordinary partnerships owning immovable property) under the rule set forth for registry of partnerships in commendam. Again, these cases are not in point, as in the Lagarde case there was no written agreement whatsoever, and in the Murrell case the Court specifically held that it was not pretended or alleged that the articles of partnership had been registered in any office, thus giving inference that the decision might have been different had the articles of partnership been recorded at all.
The defendants, of course, contend the registry in the conveyance records, which was the customary practice in St. Mary Parish, was sufficient and also contend under both the jurisprudence and the statutory law of Louisiana, the recordation of the partnership agreement was effective when the instrument was delivered to the Clerk and cites many cases in support of this position. Again, none of the cases is applicable to the situation herein.
The Trial Judge felt that the recordation was not in compliance with the law and the recording party had received what he asked for, that is, recordation in the wrong set of books, and the recording party should have required the articles to be recorded in the mortgage records, preferably in a special partnership book as part of the mortgage records. He went on to conclude, citing with approval the Murrell case, that the purpose of recordation is not only to give notice to third persons but also to give effect among the parties themselves.
An examination of the pertinent articles in question will show that the defendants provided substantial compliance with the statute and any non-compliance was a result of the failure of the Clerk of Court to perform his ministerial duties. Article 2836 requires if a partnership consists of real estate it must be in writing and made according to the rules prescribed for the conveyance of real estate and recorded in the same manner as partnerships in commendam. This the defendants did. Article 2846 provides that partnerships in commendam must be signed by the parties in the presence of one or more witnesses and recorded in full by the officer authorized to record mortgages in the place where the principal business of the partnership is carried on. This the defendants did. Article 2847 provides that the record mentioned in Article 2846 shall be made within six days from the time of the execution of the contract in the place where the principal establishment is situated. This the defendants did. However, under Article 2848 it is the officer authorized to record mortgages who shall keep a special book for the purpose of recording acts of partnership. This was not a duty imposed upon the defendants.
It is the position of this Court that when the defendants timely filed the articles of *437 partnership in the proper form in the proper Clerk's office, substantial requirement of the law had been met. The articles of partnership were recorded in the conveyance records, the customary and ordinary place for recording such documents in the Parish of St. Mary, and as the record clearly shows, anyone examining the records in St. Mary Parish would have been able to determine the fact that the partnership agreement had been recorded in said Parish. To hold under these circumstances that a party to this agreement could take advantage of the fact that the Clerk's office in St. Mary Parish had no partnership book and destroy the very purposes for which the partnership was formed, can in no manner be justified under the statutes, especially in view of the fact that it is the opinion of this Court that the defendants did all required of them under the law.
Again, it should be emphasized we are not here dealing with the question of notice but, in that respect, there is no doubt anyone purchasing on the face of the records, as done herein, would have had ample notice of the fact of the recordation of the partnership agreement.
It is, therefore, the conclusion of this Court that the partnership in question is an ordinary partnership entitled to own immovable property; in its formation all of the requisites of the law were met, and as the partnership agreement contained a prohibition against assignment of the assets by the partners during the existence of the partnership, the sale of the royalty interest from Ella Kidd, Roland E. Kidd, Sr., Hugh E. Kidd, Sr. and Margaret Kidd Siener to W. H. Ellis was null and void and consequently the sale from Ellis to the plaintiff is null and void and of no effect and plaintiff's suit should be dismissed.
Therefore, the judgment of the Lower Court is hereby reversed and judgment rendered in favor of the defendants, rejecting plaintiff's demands and dismissing the suit at plaintiff's costs.
Reversed.