291 So.2d 425 (1974)
Jose CORTIZA, dba Joe's Welding Shop
v.
Ralph ROSENBLAT and M. & R. Company.
No. 6066.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1974.
*426 Drake & Fernandez, Manuel O. Fernandez, New Orleans, for plaintiff-appellee.
Joel P. Loeffelholz, New Orleans, for defendants-appellants.
Before SAMUEL, SCHOTT and BOURG, JJ.
SAMUEL, Judge.
This is a suit to recover $620, represented to be the balance due on a contract for remodeling work on a building located at 4007 Prytania Street in New Orleans. The defendants, M. & R. Company, a partnership, and Ralph Rosenblat, one of its partners, answered averring, insofar as issues before this court are concerned, the plaintiff did not complete the job in a workmanlike manner in accordance with the plans and specifications incorporated in the contract. Alternatively, Rosenblat asserted that M. & R. Company is an ordinary partnership with the result that he is only bound to the extent of his virile share in the partnership should judgment be rendered against it.
After a trial on the merits, judgment was rendered in favor of the plaintiff against both named defendants and against one Max Fuksman, Rosenblat's sole partner, in the amount of $500. From that judgment, Rosenblat, the partnership, and Fuksman[1] have appealed.
*427 The contract document consists of a half page contract which expressly incorporates two blue-line drawings. In the contract plaintiff agreed to remove a wooden second floor balcony and replace it with an ornamental iron and steel porch measuring 48 feet in length by 6 feet in width. The total price for the job was $2,000, and it is admitted the defendants have paid all but $500 of this amount.
Rosenblat and Fuksman both complained that the contract was not performed in a workmanlike manner. They testified the welding is rough, weatherboards were not replaced in front of the building, a steel beam was not embedded in the front of the building at the level of the second story porch in order to anchor the porch to the building, (apparently alternatively) the steel support at the back of the porch abutting the face of the building was not placed in its proper spot in accordance with the drawing, the junction between the new steel porch and the front of the house was not waterproofed and allowed rain water to drain down the face of the building, and the metal plates which form the base of the support columns did not fit flush with the first story concrete porch upon which the entire new structure was built.
Plaintiff presented the testimony of Jose Fernandez, an engineer who testified he had prepared the drawings and written the contract. He stated the work had been done in accordance with the drawings and the contract. In addition, he testified the metal plates at the base of the iron columns did not fit flush with the concrete porch because the porch itself was not flat; but the plates formed their weightbearing function properly and were secured by bolts into the concrete to hold the column in place.
A review of the drawings, and particularly the overhead drawing made part of the contract, shows that at all times the parties contemplated the porch would be supported where it joined the house by four columns composed of ¾ inch angle iron. These columns are shown on the drawing and there is no provision in the contract for the installation of a metal beam in or against the front of the building at the second floor porch level into which the porch was to be anchored.
The only possible variances in the contract and drawings are the lack of paint on certain weatherboards replaced by the plaintiff and the improper position of one of the rear columns against the front of the house. Both the plaintiff and his witness testified the weatherboards were not painted. However, there is nothing in the contract which calls for the plaintiff to perform painting other than a primer and one coat on the steel installed by him.
In addition the drawings provide that the four posts at the back of the porch abutting the house were to be located directly behind its corresponding post at the front of the porch. One of the rear posts was moved to one side approximately 3 feet because it would have interfered with access to what appears to be built-in mailboxes in the front of the building. The defendants contend these mailboxes should have been considered when the drawings were made and that plaintiff is in breach of the contract by installing the column as he did. It is undisputed that moving the column approximately 3 feet had no effect on the structural integrity of the porch.
Plaintiff testified, and the lower court found, that he placed the column where he did with full knowledge and at the order of the defendants. It is clear that neither plaintiff not the defendants considered the existing mailboxes when the plans were approved.
Under the law this court is not compelled to decide who should bear the loss for this mutual oversight or to determine what amount, if any, should be deducted from the contract price. The record is clear that the plaintiff at least substantially performed the contract. The law is equally clear that building contracts are an exception to the general rule that a *428 party cannot recover on a commutative contract unless he can prove full performance. On the contrary, a construction contractor can sue for and recover the full contract price merely upon proof of substantial performance. In such a case the owner's remedy is to allege and prove the extent of any unfinished or defective work and the cost of completion or correction thereof in order to reduce the contractor's recovery by the amount of the cost of completion or correction; the burden is not upon the contractor to prove the value of the work actually done; the burden rests squarely upon the owner to prove the cost of correction or completion.[2]
In the present case, even if the defects complained of by defendants actually exist, the record contains no evidence whatsoever regarding the cost of completion or correction. The defendants did not attempt to carry their burden of proof in this regard. Accordingly, we find plaintiff is entitled to recover the remaining $500 balance of the contract price.
The trial court had no authority to cast Max Fuksman as a party defendant in this case. He was never named as a defendant, nor was he cited or served at any time. It is admitted that he is a partner of Rosenblat, that together they own M. & R. Company, the defendant partnership, and that he signed the contract in question. However, his only procedural connection with this case is his testimony in favor of the named defendants. Article 6 of the Louisiana Code of Civil Procedure reads as follows:
"Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. This jurisdiction must be based upon:
(1) The service of process on the defendant, or on his agent for the service of process;
(2) The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state; or
(3) The submission of the party to the exercise of jurisdiction over him personally by the court, or his express or implied waiver of objections thereto." LSA-C.C.P. Art. 6.
A partnership is a separate legal entity from its partners and has the procedural capacity to be sued in its own name.[3] Service on a partnership is made by personal service on one of its partners.[4] However, service on one partner or on the partnership itself does not have the effect of conferring a court with jurisdiction over the person of an absent partner to the extent that a personal judgment may be rendered against him.[5] The citation of Rosenblat and the partnership did not confer jurisdiction over Fuksman under LSA-C.C.P. Art. 6(1) or (2), and his appearance at the trial as a witness did not constitute a voluntary submission to the jurisdiction of the court under LSA-C.C.P. Art. 6(3). The judgment must be amended accordingly.
The final issue for our determination is whether the defendant Rosenblat is personally liable solidarily with the partnership or whether he is only bound jointly for his virile share in accordance with LSA-C.C. *429 Arts. 2872 and 2873. These articles provide as follows:
"Ordinary partners are not bound in solido for the debts of the partnership, and no one of them can bind his partners, unless they have given him power so to do, either specially or by the articles of partnership.
Commercial partners are bound in solido for the debts of the partnership." LSA-C.C. Art. 2872.
"In the ordinary partnership, each partner is bound for his share of the partnership debt, calculating such share in proportion to the number of the partners, without any attention to the proportion of the stock or profits each is entitled to." LSA-C.C. Art. 2873.
The jurisprudence uniformly has given a literal interpretation to these articles, with the result that members of an ordinary partnership are not bound in solido for partnership debts; each partner in such a partnership is bound only for his virile share of the debt.[6]
Whether the partnership is ordinary or commercial depends on the intention of the parties and the nature of the business conducted by it.[7] Since a commercial partnership is exclusively confined to dealing in movables, it has been held that a partnership which has as its purpose the sale or rental of immovable property is by nature an ordinary partnership.[8] Rosenblat and Fuksman were engaged in a partnership dedicated exclusively to the purchase and rental of immovable property. As such a partnership is regarded judicially as ordinary rather than commercial in nature, the trial court's judgment must be amended to limit the liability of Rosenblat to his virile share of the partnership debt.
For the foregoing reasons, the judgment appealed from is amended by annulling and setting aside that part of the judgment which casts Max Fuksman and by limiting the personal liability of the defendant, Ralph Rosenblat, to his virile share of the partnership debt, i.e., to the sum of $250. As thus amended, and in all other respects, the judgment is affirmed. The plaintiff and the defendants are to bear their own costs of this appeal.
Amended and affirmed.
NOTES
[1] Fuksman was not named as a defendant nor was he ever cited or served. His only relationship to the lawsuit was his appearance at the trial as a witness for the defense.
[2] LSA-C.C. Art. 2769; Dugue v. Levy, 114 La. 21, 37 So. 995; Delta Paving Company v. Woolridge, 209 So.2d 581, writ denied 252 La. 176, 210 So.2d 56; Graham v. Lieber, La.App., 191 So.2d 204; Rocquin v. Simmons, La.App., 187 So.2d 472; Airco Refrigeration Service, Inc. v. Fink, 127 So.2d 290, affirmed 242 La. 73, 134 So.2d 880.
[3] LSA-C.C.P. Art. 737.
[4] LSA-C.C.P. Art. 1263.
[5] See American Photo Player Co. v. Simon, 151 La. 708, 92 So. 307; Klotz v. Tru-Fruit Distributors, La.App., 173 So. 592; Snyder v. Davidson, 15 La.App. 695, 129 So. 185, affirmed 172 La. 274, 134 So. 89; LeBlanc v. Marsoudet, 25 La.Ann. 464; McGehee v. McCord, 14 La. 362.
[6] See, for example, Edkins v. Edwards, La. App., 235 So.2d 200; Champagne v. Southern Farm Bureau Cas. Ins. Co., 170 So.2d 226, writ refused 247 La. 417, 171 So.2d 668. See also Modern Appliance & Supply Co. v. B. F. Ibos & Sons, La.App., 16 So.2d 552 where judgment was rendered against the partnership for the total obligation and against each member jointly for his virile share.
[7] Shalett v. Brownell-Kidd Company, La. App., 153 So.2d 425; Moore v. Doughtie, 14 La.App. 407, 126 So. 235.
[8] Drew v. Bank of Monroe, 125 La. 673, 51 So. 683; Hollingsworth v. Atkins, 46 La. Ann. 515, 15 So. 77 (partnership for leasing immovable property designated as ordinary partnership); Shalett v. Brownell-Kidd Company, supra, footnote 7; Williams Lumber Co. v. Stewart Gas & Bro., La.App., 21 So.2d 773; May v. New Orleans & C. R. Co., 44 La. 444, 10 So. 769.